## Clyde's Estate.

Argued March 22, 1938.　Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Paul W. McAllister,* with him *Ralph J. McAllister,* of *McAllister & McAllister,* and *Goethe Foust,* for appellant.

*William S. Rial,* with him *S. W. Bierer, H. E. Marker* and *H. E. Marker, Jr.,* for appellee.

OPINION BY MR. JUSTICE MAXEY, April 18, 1938:

The principal question presented here by the appellant is whether her deceased husband's executor and trustee had a right, nearly two years after decedent's death, to give a mortgage on his real estate to secure his indebtedness to a creditor. She denied that he had. Her exceptions to appellee's account as fiduciary were dismissed. This appeal followed.

Decedent died on October 3, 1928; his will named appellee, Robert H. Little, executor and trustee. Decedent's assets consisted of real estate in Westmoreland County, much of which was unimproved and unproductive, and an interest in Florida real estate, the latter being an undeveloped orange grove. The Pennsylvania real estate was appraised at $23,750. The personal assets were valued at only $1,333.86. This sum was entirely insufficient to pay admitted debts and expenses of $13,747.24. By his will testator directed payment of his debts, and devised and bequeathed practically his entire estate, real and personal, to his executor in trust to pay the income to his widow for life, with certain other provisions not now material. By the seventh clause of his will he provided as follows: "I will and direct that should my Executor and Trustee, in his sole discretion and sound judgment deem it necessary for the support of my wife, or advantageous to my estate to sell, dispose of or mortgage all or any of same, then I order and direct my Executor, or his successors, as soon as conveniently may be to sell, dispose of, or mortgage any part of my estate real, personal or mixed, wheresoever the same may be situate to such person or persons, and for such sum or sums in case of a mortgage as may be reasonably necessary for the purpose aforesaid and in case of a sale, for such

price or prices as he may deem reasonable and proper and for the above purposes I hereby authorize and empower my said Executor and Trustee, or his successors, to sign, seal, execute and acknowledge and deliver all such papers, contracts, mortgages, deed or deeds of conveyance as may be requisite and necessary for the granting and assigning the same to the mortgagee or mortgagees, or purchaser or purchasers thereof in fee simple or otherwise, free from all liability for or on account of the application of the mortgage or purchase moneys, free and discharged from all trusts whatsoever; and the moneys arising from such mortgaging or sales after making such allowances thereout as may be necessary for the support of my said wife, to reinvest the same." The trust was to continue for ten years after the death of appellant, his wife, and the principal was then to be distributed to named individuals and charities.

Appellee qualified as executor and assumed the trust. A few days after testator's death, the appellee was notified by officials of the First National Bank of Greensburg that it held a note of $9,300 against the testator, and payment of the same was demanded. The existence and validity of this indebtedness is conceded by all parties. Certain brief negotiations ensued, during which the bank advised appellee that a suit would be begun to preserve its creditor's lien on decedent's real estate under section 15 of the Fiduciaries Act of June 7, 1917, P. L. 447 (20 P. S. sec. 521), unless other arrangements could be concluded securing the indebtedness. The best interests of the estate, appellee believed, demanded that he give the bank as security for the payment of the note, a mortgage on decedent's real estate, under his testamentary authority. This the bank was willing to accept, and, in consequence of appellee's oral agreement, it agreed to forbear bringing suit, which, if carried to judgment and execution sale, might result in wiping out the value of the estate. The agreement between the

parties was not reduced to writing. Appellant appears not to have opposed this method of handling the indebtedness to the bank, but she did not consent that the mortgage should cover, as when subsequently executed it did, the dwelling house of decedent in which she resided. The mortgage was not executed and delivered to the bank within the year prescribed for the bringing of suit by section 15 of the Fiduciaries Act, supra. It was not until August 25, 1930, that this was done; this was more than 22 months after decedent's death. The mortgage, when given, was in the sum of $9,500, i. e., $200 more than the amount of the note. The $200 balance, it is not disputed, was paid in cash to appellee and by him devoted to the discharge of other debts of decedent.

Appellee filed his account as executor and trustee in November, 1936. Exceptions were taken by appellant to items therein claiming credit for payments aggregating $3,111.31 on account of interest due on the mortgage and note, and other charges thereon. If the mortgage was given by the executor in the proper exercise of his authority and he is, as a consequence, entitled to exoneration for payments thereon out of assets of the estate, this appeal must fail.

Our conclusion is that the executor was within the powers conferred on him by the above cited paragraph seven of testator's will, in agreeing to execute and deliver the mortgage in question, and in carrying out the transaction thereafter, even after termination of the one-year period during which the bank could have established a lien on decedent's real estate by bringing suit. The forbearance of the bank from bringing the action, at appellee's instance, was ample consideration for the mortgage: *Schroyer et al. v. Thompson et al.*, 262 Pa. 282, 105 A. 274; *Clark v. Russel*, 3 Watts. 213. The fact that the mortgage was not actually given until the time for bringing suit had expired is of no conse-

quence, where the agreement to execute and deliver it was explicit and was the inducement for forbearance. Furthermore, appellee was not limited to any such period by the provisions of the will. This case is not ruled by the decisions of this court in *Oliver's Appeal,* 101 Pa. 299, and *Bindley's Appeal,* 69 Pa. 295, where there was a mere acknowledgment, express or implied, by the decedent's personal representative of the existence of the debt. Here a mortgage was delivered, in conformity with the express power conferred by the will on appellee.

The giving of the mortgage was manifestly within his "sole discretion and sound judgment," should he "deem it necessary for the support of [testator's] wife, or advantageous to [his] estate." The advantage to testator's estate, and the benefit to his widow, of avoiding a forced sale of the real estate at the suit of a creditor is too obvious to require extended comment; clearly the execution and delivery of a mortgage as security for an acknowledged debt was an expedient which the will permitted. The final clause of paragraph seven, directing that the proceeds of such mortgage be invested, does not diminish the power granted. If the mortgage was for a cash consideration, this was to be devoted to the purpose indicated, but we do not construe this clause as one limiting appellee to the execution of a mortgage for investment purposes only. Here the mortgage was beneficial to the estate, and not, as was the deed in *Young v. Weed et al.,* 154 Pa. 316, 320, 26 A. 420, for the mere purpose of preferring a creditor.

Since the mortgage was validly given, appellee, as executor and trustee, may rightfully claim exoneration out of the assets of the estate in his hands, for the payments of interest made on the note and mortgage. The rents which he collected from decedent's productive real estate could be applied unquestionably to this indebtedness, not only because of the rule of *Reel's Estate,* 263 Pa. 248, 106 A. 227; 272 Pa. 139, 116 A. 109, but also

because the real estate was all devised to the executor and, as already determined, he legitimately subjected it to the lien of the mortgage given the bank, as authorized by testator's will. *Reel's Estate,* supra (272 Pa. 139), is applicable in another respect. Here appellee secured to the estate an advantage, and a benefit as well to appellant, by an agreement with the bank which the latter could have compelled him to carry out, or be liable in damages for a breach thereof. Appellee was under no duty to procure this advantage. His action in so doing may be likened to those cases, such as *Reel's Estate,* where a fiduciary or creditor advances funds for the preservation of the estate and is consequently granted exoneration out of the real assets thereof, though he failed to establish a lien thereon in the manner required by the statute: *Donnelly's Estate,* 246 Pa. 308, 316, 92 A. 306; *Bentley's Estate,* 196 Pa. 497, 46 A. 898. We are of opinion that the payments in question were well made in discharge of legal claims against decedent's real estate, and as a consequence appellee was entitled to credit therefor in rendering his account.

Appellant's remaining exceptions, likewise dismissed by the court below, require only brief comment. Appellant objected to substantial items in the account showing payments of maintenance charges on decedent's unproductive and unimproved properties, some of it consisting of vacant lots in Westmoreland County and the balance apparently being the Florida real estate. The nature of decedent's interest in the Florida property does not appear from the record. The question raised is one of allocation of such charges between income and principal of the estate. It cannot be decided on the present accounting proceeding, for the account itself which was filed by appellee entirely fails to make such allocation. There is nothing in the record to indicate whether appellee claims credit for these payments out of principal or out of income. The account is, in this respect, plainly not in accord with approved orphans'

court procedure, since all payments, of whatever character, whether from principal or income, are lumped together in a composite total giving a balance unsegregated as to principal or income. Moreover, no notice of the audit was given to parties entitled in remainder, whose interest it would be to preserve the principal of the trust. This issue cannot be considered as having been adjudicated by the court below, i. e., between parties who, after due notice, appeared and were heard. It does not appear to have been passed upon by the court or to have been finally disposed of in any manner. Appellant will, therefore, be at liberty at any time to require an adequate accounting by this fiduciary, upon which the question of proper allocation of payments between principal and income will be presented and may then be disposed of.

The only remaining exception relates to a credit claimed by appellee on account of expenses, fees and commissions which are designated in the account as "time, trouble and expense." The court below held that the sum claimed was not exorbitant under the circumstances; we find no reason to question this conclusion.

The assignments of error are overruled.

The decree is affirmed, costs to be paid out of the estate.