457 P.2d 422

TOM NAKAMURA, INC., a corporation,
Plaintiff, Appellant and
Cross-Respondent,

v.

G. & G. PRODUCE COMPANY, Inc., a corpo-
ration, Defendant-Respondent,

Lonnie Garrison, individually, and Max Leh-
man, individually, Defendants-Respond-
ents and Cross-Appellants.

Max LEHMAN, individually, and Max Leh-
man and Lonnie Garrison, a partnership,
Counter-Claimants, Respondents and Cross-
Appellants,

v.

TOM NAKAMURA, INC., a corporation,
Counter-Defendant, Appellant
and Cross-Respondent,

and

St. Paul Fire & Marine Insurance Company
(*surety on the attachment bond*), an insur-
ance corporation, Counter-Defendant and
Cross-Respondent.

R. A. WARNOCK, Plaintiff-Appellant and
Cross-Respondent,

v.

G. & G. PRODUCE COMPANY, Inc., a corpo-
ration, Defendant-Respondent,

Lonnie Garrison and June Garrison, husband
and wife, and Max Lehman, individually,
Defendants-Respondents and Cross-Appel-
lants.

Max LEHMAN, individually, and Max Leh-
man and Lonnie Garrison, a partnership,
Counter-Claimants, Respondents and Cross-
Appellants,

v.

R. A. WARNOCK, Counter-Defendant, Appel-
lant and Cross-Respondent,

and

Western Surety Company (Surety on attach-
ment bond), an insurance company, Coun-
ter-Defendant and Cross-Respondent.

No. 9972.

Supreme Court of Idaho.

July 8, 1969.

Rehearing Denied Aug. 18, 1969.

Bruce O. Robinson, Nampa, for plaintiffs, appellants, counter-defendant and cross-respondents.

John Hjellum, Boise, counsel for Max Lehman, individually, Lonnie Garrison and Max Lehman, a partnership counter-claimants, respondents and cross-appellants.

Brauner, Fuller & Doolittle, Caldwell, counsel for defendants, G. & G. Produce Co., Inc., Lonnie Garrison and June Garrison, individually, Lonnie Garrison and Max Lehman, a partnership, counter-claimants, respondents and cross-appellants.

SHEPARD, Justice.

The cases presented herein were consolidated for purposes of trial. Both cases involve claims by plaintiffs against a corporation known as G. & G. Produce Co., Inc. and the other defendants. Plaintiff Nakamura claimed indebtedness to it in the amount of $9,073.89 as the result of the sale of three loads of mixed produce to G. & G. Produce. Warnock claimed indebtedness to him in the amount of $1,946.23 on an open account against G. & G. Produce for trucking services and for the further amount of $4,212.58 for prior trucking services evidenced by a note executed by Lonnie and June Garrison, as individuals, and as corporate officers of G. & G. Produce.

The evidence indicates that the ownership of G. & G. Produce Co., Inc. was wholly in the Garrison family. Lonnie and June Garrison, husband and wife, together with their son Russell, constituted the board of directors, the officers of the corporation, and the sole stockholders at all times. On occasion the funds of the corporation were commingled with the personal funds of the Garrisons in various bank accounts. During the summer of 1964, Lonnie Garrison was engaged fulltime in the growing of a potato crop in a partnership consisting of himself and Max Lehman. While working on that potato crop during that summer, Lonnie Garrison drew $100 per week from the corporation. Lonnie Garrison furnished to the partnership certain monies which he had borrowed from the corporation at a time when the corporation was already insolvent and such loan was not evidenced by any written instrument.

Suits were instituted on October 14, 1964 and on October 28, 1964 by Nakamura and Warnock, respectively. The Nakamura suit was instituted not only against G. & G. corporation, but against Lonnie Garrison and Max Lehman, individually, and against the Garrison-Lehman partnership. Nakamura's theory, insofar as the same can be determined, was that the G. & G. corporation was indebted to Nakamura and that the Garrisons were the alter ego of the corporation, and that the corporation was, in fact, a fictitious entity used to shield the Garrisons from personal liability. They also theorized that Lonnie Garrison used corporate funds from G. & G. Produce to pay his share of the expenses in raising the partnership potato crop, and they conclude therefrom that the Garrison-Lehman partnership became in effect a three-way partnership in which the G. & G. corporation was the third partner. The Warnock theory of suit against those other than the G. & G. corporation was essentially the same as that of Nakamura except that, as above indicated, Lonnie and June Garrison had executed a note in favor of Warnock not only as officers of the cor-

poration, but as individuals. The trial court rendered judgment in favor of each of the plaintiffs against G. & G. corporation for said amounts. The trial court also rendered judgment in favor of Warnock against Lonnie and June Garrison, as individuals, for the amount of the note which they had executed as individuals. From said judgments of the trial court no appeal was taken.

The trial court dismissed the Nakamura action against Lonnie and June Garrison, as individuals, against the Garrison-Lehman partnership, and as against Lehman as an individual. The court also dismissed the Warnock action against the Garrison-Lehman partnership and as against Lehman as an individual. Appellants Nakamura and Warnock appeal this ruling of the district court and argue that under the facts as established we should pierce the corporate veil, disregard the corporate entity, and attach personal liability to Lonnie and June Garrison, who they allege are the alter ego of G. & G. Produce Co., Inc. They further argue that liability for the corporate indebtedness should also be attached to the Garrison-Lehman partnership and to Max Lehman as an individual, since G. & G. Produce Co., Inc. contributed funds to the partnership venture and in effect thus became a third partner in the venture.

We hold that the judgment of the trial court dismissing the actions as to Lonnie and June Garrison, as individuals, was erroneous and such portion of the trial court's decision is reversed. As this Court said in Hayhurst v. Boyd, 50 Idaho 752, 300 P. 895 (1931):

"To warrant casting aside the legal fiction of distinct corporate existence * * * it must also be shown that there is such a unity of interest and ownership that the individuality of such corporation and such person has ceased; and it must further appear from the facts that the observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice."

Accord, Jolley v. Idaho Securities, Inc., 90 Idaho 373, 414 P.2d 879 (1966), and Metz v. Hawkins, 64 Idaho 386, 133 P.2d 721 (1943).

■ It is undisputed in the record before us that the Garrisons, as individuals, were in effect the alter ego of G. & G. corporation or vice versa, and that there was such a unity of ownership and interests between the individuals and the corporation as to make them indistinguishable. The assets, interests and debts of the Garrisons and G. & G. corporation were so intertwined as to make the distinction between them as individuals and as a corporation merely a distinction without a difference. We hold, therefore, that the corporate entity in this case must be disregarded to prevent injustice and that June and Lonnie Garrison should be held personally liable for these debts contracted in the name of the corporation.

■ As herein mentioned, the district court dismissed the actions as to Max Lehman personally. There is nothing in the record before us which in any way indicates that Lehman was privy to any of the transactions bringing about the indebtedness of the corporation to Nakamura and/or Warnock. The record is devoid of any indication that Lehman personally benefited in any way from any of the transactions in question or had any contact with G. & G. corporation or with plaintiffs or either of them. It is, therefore, obvious that the trial court was correct in its action in dismissing Lehman as a defendant in the action and such portion of the judgment of the trial court is affirmed.

■ We then come to the question of the liability of the Garrison-Lehman partnership and the correctness of the trial court's judgment dismissing the partnership as a defendant. The district court found that the land upon which the potato crop was raised was leased by Garrison and Lehman as a partnership; that the arrangement provided that Garrison would furnish the seed and Lehman the equipment for the operation. There is no indi-

cation that Lehman was aware of Garrison's borrowing from the G. & G. corporation nor that there was any intent or agreement by Lehman or anyone that G. & G. Produce Co., Inc. was to be taken into the partnership farming operation as a partner. To summarize, it is contended that a corporate debt has, by operation of law, become the debt of an individual stockholder and since that individual is a partner in a partnership, the partnership should be liable for the debt. No authority has been cited by appellants herein that in such case a creditor of a particular partner may bring an action and gain recovery against a partnership. Appellants presented no proof which would in any way indicate that Max Lehman as a member of the partnership was estopped to deny that the debt was one of the partnership. I.C. § 53–324, provides the property rights of a partner are:

"1. His rights in specific partnership property.

2. His interest in the partnership.

3. His right to participate in the management."

I.C. § 53–325, provides in pertinent part:

"1. A partner is coowner with his partners of specific partnership property, holding as a tenant in partnership.

2. The incidents of this tenancy are such that:

*   *   *   *   *   *

c. A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership. * * *."

I.C. § 53–328, provides in pertinent part:

"1. On due application to a competent court by any judgment creditor of a partner, the court which entered the judgment, order, or decree, or any other court, may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt with interest thereon; * * *"

The record before us conclusively shows that the statutory procedure hereinabove enumerated was not complied with by either of plaintiffs in this action. We, therefore, affirm that portion of the judgment of the district court dismissing the partnership as a defendant in the action.

We come then to the final question presented, the alleged unlawful attachment. Prior to the institution of these suits, Tom Nakamura had numerous telephone conversations with Lonnie Garrison requesting payments on the overdue accounts. Garrison told him on various occasions that he, Garrison, would have additional income from the proceeds of a potato crop in Hammett, Idaho, and that the overdue accounts would be paid therefrom. Evidently, both Nakamura and Warnock gained the impression that the potato crop belonged to Garrison and his wife as individuals, or belonged to the G. & G. corporation. On October 15, 1964, a writ of attachment was issued in the Nakamura case directed to the sheriff of Elmore County requiring him to attach the potato crop in Hammett, Idaho, which was then in the process of being harvested. The sheriff went to the premises, ordered all harvesting stopped, and ordered that no potatoes should be removed from the premises. He, however, never took possession of the potatoes nor did he post written notice of the attachment on the premises. It is undisputed, however, that all harvesting work stopped at that point. Shortly after the institution of the Warnock suit, an attachment was also issued upon the same potato crop in Hammett, Idaho, and by the same sheriff executed in like fashion.

The partnership of Garrison and Lehman, and Garrison and Lehman as individuals, counterclaimed in the original action claiming a wrongful attachment since the potato crop was owned by the partnership of Garrison and Lehman. The counterclaimants allege the loss of working hours in the harvesting, loss of equipment and labor, for losses of certain portions of the crop, attorneys' fees, costs of obtaining an attachment bond for release of the attachment, and punitive damages, all as counter-

claims to both the Nakamura and Warnock actions. The trial court dismissed the counterclaim on the basis that the purported attachments by the sheriff of Elmore County were invalid and, therefore, there could have been no "wrongful attachment." Cross-appellants assign error in that action of the trial court. No discussion thereof is deemed necessary. Counsel for appellants Nakamura and Warnock do not, in their opening brief, favor us with any authorities or argument sustaining the trial court's determination that the attachment was invalid because of failure of the sheriff of Elmore County to comply with the statutory requisites. Counsel for defendants and cross-appellants in their brief argue that the attachment was valid. Counsel for appellants Nakamura and Warnock filed no reply brief discussing the validity of the attachment and in fact upon oral argument specifically admit that the attachment of the property was valid and that the judgment of the trial court was erroneous in this regard. The record reveals that Lehman was present at the time the sheriff of Elmore County informed those working in the potato fields that the crop was attached and that all harvesting work was to cease and, in fact, it did cease at that point. The owners of the crop do not assert that the notice of the attachment was improper. That notice was for their sole benefit and we hold that in such situation the formal notice may be waived and that the injured party is not thereby precluded from recovering his damages, if any there be. We hold, therefore, as agreed by all parties herein, that the attachment was valid.

█ We turn then to the question as to whether the attachment was actually "wrongful." As hereinabove cited, I.C. § 53–325, provides a specific prohibition against attaching a partner's right in specific partnership property, and I.C. § 53–328 provides the mechanics necessary to reach a partner's interests in partnership property through the medium of a charging order. It is undisputed that no such charging order was acquired and we conclude, therefore, that the attachment was wrongful as against the partnership and it may recover damages therefor. We hold, therefore, that the trial court erred in dismissing the cause of action of the partner for wrongful attachment.

In remanding this matter for the consideration of liability on the claim for wrongful attachment, we deem it advisable to remind the lower court that our statute, I.C. § 53–304(2), applies the law of estoppel to Idaho partnership law. It is unclear from the record before us precisely what representations, if any, were made by Lonnie Garrison to Nakamura and Warnock concerning the ownership of the potato crop. Whether the representations were such as to induce Warnock and Nakamura to levy attachment upon the potato crop under the belief that they were owned by either Lonnie Garrison, individually, or G. & G. corporation, is likewise unclear from the record before us. In the event that such representations were made by Garrison and in fact, did induce the actions of Nakamura and Warnock, this could result in an estoppel from asserting the claim for wrongful attachment or act in mitigation of the damages for wrongful attachment. If such representations were made, it would be inequitable, of course, to permit Garrison to make the representations inducing the attachment and then sue for wrongful attachment. If suit were allowed for wrongful attachment, Garrison would be profiting from his wrongdoing and misrepresentations even though such profit might accrue to him as a member of the partnership.

The decision of the district court is affirmed as indicated, reversed as indicated, and remanded for further proceedings in conformance with and consistent with this opinion. Each party to bear their own costs.

McFADDEN, C. J., and McQUADE, DONALDSON and SPEAR, JJ., concur.