514 P.2d 594

**SURETY LIFE INSURANCE COMPANY,**
a corporation, Plaintiff-Appellant,

v.

**ROSE CHAPEL MORTUARY, INC.,** a defunct corporation, et al., Defendants-Respondents,

v.

Wilford Gene **HESS** et al., Additional Defendants on Cross-Claimants and Respondents.

No. 11240.

Supreme Court of Idaho.

Sept. 27, 1973.

Warren E. Jones, Eberle, Berlin, Kading, Turnbow & Gillespie, Ctd., Boise, for appellant.

Winston V. Beard, Peterson, Moss, Olsen & Beard, Idaho Falls, for respondent United States Fuel Co.

John Ferebauer, Ferebauer & Whyte, Idaho Falls, for respondents.

BAKES, Justice.

This is an appeal from a judgment of the Seventh Judicial District entered October 4, 1972, in an action brought by appellant, Surety Life Insurance Company hereinafter referred to as appellant), to foreclose a mortgage executed by Clyde Hess & Son Distributing Co., (an Idaho corporation hereinafter referred to as Hess Distributing), and Rose Chapel Mortuary, Inc., (a defunct Idaho corporation hereinafter referred to as Rose Chapel), to Continental Western Mortgage, Inc., which was subsequently assigned to appellant. Respondent United States Fuel contested the priority of appellant's mortgage over its own mortgage on the property owned by Hess Distributing which was given to secure an open trade account indebtedness. The issue of priority of the mortgages on the property owned by Hess Distributing was submitted to the district court on a written stipulation of facts. It was also stipulated that certain affidavits and depositions were to be considered by the court to the extent that they were not inconsistent with the stipulation of facts.

The facts pertinent to this appeal can be summarized as follows: On November 8, 1965, Hess Distributing and Rose Chapel jointly executed and delivered a $40,000 mortgage to Continental. This mortgage was assigned to appellant for valuable consideration on January 6, 1966. The mortgage covered two tracts of land, one tract owned by Rose Chapel and the other owned by Hess Distributing. The mortgage was executed to secure financing for the construction of a mortuary on the real property owned by Rose Chapel. At the time of the execution of the mortgage by Hess Distributing and Rose Chapel, Wilford Hess and his wife, Betty Hess, owned all of the stock of both Hess Distributing and Rose Chapel except for qualifying shares. Wilford Hess acted as president and manager of both corporations and all transactions concerning the corporations were made by the common consent of Wilford and Betty Hess. There were separate books maintained for each corporation. However, the parties stipulated that corporate proceedings were generally not otherwise followed and that the Hesses had dispensed with stockholders and directors meetings.

The funds of Hess Distributing were used to pay labor costs incurred in the construction of the mortuary for Rose Chapel. In a deposition the Hesses testified that they hoped to use anticipated profits from the operation of the mortuary to offset the operating losses which Hess Distributing had been sustaining on a regular basis.

On January 2, 1967, approximately one year subsequent to the execution of the mortgage to Continental, respondent United States Fuel, to whom Hess Distributing was heavily indebted, obtained a mortgage from Hess Distributing on the Hess Distributing property as security for the outstanding debt. The mortgage executed by Hess to U. S. Fuel specifically acknowl-

edged the existence of the prior Continental mortgage.

On August 28, 1970, appellant brought suit to foreclose its mortgage. On January 31, 1972, the district court granted a partial summary judgment in appellant's favor regarding the Rose Chapel property. That judgment has not been appealed. Thereafter, the question of priority between appellant Surety Life's and respondent U.S. Fuel's mortgage on the Hess Distributing property was submitted to the district court on a stipulation of facts, affidavits and depositions. The district court found that respondent U. S. Fuel's mortgage, though subsequent in time to that of appellant, nevertheless had priority over appellant's mortgage because the mortgage executed by Hess Distributing to Continental was *ultra vires,* without consideration, and a fraud on the creditors of Hess Distributing.

■ Appellant assigns as error the trial court's holding that its mortgage executed by Hess Distributing was junior to the admittedly later U. S. Fuel mortgage because it was *ultra vires,* without consideration, and a fraud on the creditors of Hess Distributing. In support of the first contention, appellant argues that Hess Distributing and Rose Chapel were operated as mere personal extensions or alter egos of Wilford and Betty Hess and that the corporate entities should be disregarded in this case in order to obtain an equitable result. While this issue is not raised expressly by the pleadings, under Rule 15(b), Idaho Rules of Civil Procedure, the issue of whether Hess Distributing and Rose Chapel were merely alter egos of Wilford and Betty Hess was impliedly tried by consent of the parties since it was stipulated that there had not been an adherence to corporate procedures, which fact would otherwise be irrelevant. Rule 15(b) provides in part:

"When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."

The complaint was impliedly amended to include the issue of whether or not, when Wilford and Betty Hess executed the Hess Distributing and Rose Chapel mortgages, they were personally burdening themselves and their property in both instances.

■ It is the general rule that the conditions under which a corporate entity may be disregarded vary according to the circumstances of each case. Automotriz Del Golfo De California v. Resnick, 47 Cal.2d 792, 306 P.2d 1 (1957). However, two requirements for application of the doctrine are (1) that there be such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2), that if the acts are treated as those of the corporation an inequitable result will follow. Jolley v. Idaho Securities, Inc., 90 Idaho 373, 414 P.2d 879 (1966); 18 Am.Jur.2d 561, Corporations, § 15 (1965); 18 C.J.S. Corporations § 6, p. 376 (1939); Fletcher, Corporations, § 41, at page 166 (1963). As this Court stated in Tom Nakamura, Inc. v. G. & G. Produce Company, 93 Idaho 183, 457 P.2d 422 (1969), quoting with approval from Hayhurst v. Boyd, 50 Idaho 752, 300 P. 895 (1931):

" 'To warrant casting aside the legal fiction of distinct corporate existence * * * it must also be shown that there is such a unity of interest and ownership that the individuality of such corporation and such person had ceased; and it must further appear from the facts that the observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice.' " 93 Idaho at 185, 457 P.2d at 424.

The parties entered into a comprehensive stipulation of facts, and the case was submitted to the trial court upon that stipulation, together with the depositions of the Hesses and the investment committee and loan officer of appellant. The trial court entered findings of fact adopting the facts in the stipulation. The stipulated facts indicate that Wilford and Betty Hess were the sole stockholders of both Hess Distributing and Rose Chapel and that Wilford Hess was the president and manager of both corporations. While that fact would not be conclusive evidence that Wilford and Betty Hess were doing business as individuals, it indicates the degree of control over both corporations which the Hesses possessed. In addition to possessing absolute control over the management and operation of the corporations, the parties stipulated that the Hesses operated both the distributing company and the mortuary business without regard for corporate procedures and formalities. They conducted no shareholders meetings. There were no directors meetings. There was no formal corporate action of any sort taken with regard to the mortgage or operation of the two businesses. The stipulation of facts provided in part:

> "Since Wilford Gene Hess and Betty C. Hess were for all practical purposes the sole shareholders of Monarch Memory Gardens, Inc., Rose Chapel Mortuary, Inc., and Clyde Hess and Son Distributing Co., the formalities of shareholders' and directors' meetings for all corporations were, for the most part, ignored. All corporate actions of said corporations with regard to the transactions herein pertinent were taken by common consent of Wilford Gene Hess and Betty C. Hess, but were not taken at duly called meetings, nor at duly held shareholders' or directors' meetings, nor pursuant to a formal vote of the shareholders or directors at such meeting. The shareholders and directors of none of the corporations signed a written authorization for the execution of any of the exhibits attached hereto. . . ." Clerk's Tr., pp. 193–194.

Further evidence of the fact that the separate identities of the Hesses and the corporations had ceased can be seen in Wilford Hess's deposition concerning the relationship between Hess Distributing and Rose Chapel wherein he stated, "One helps the other." Indeed, one did help the other. Hess Distributing provided funds to cover labor costs incurred in the construction of the mortuary. Some, but not all, of these funds were reimbursed to Rose Chapel from the loan proceeds of the Continental mortgage.

The stipulation of facts also indicates that Hess Distributing was sustaining regular losses and that Wilford Hess planned to use anticipated profits derived from Rose Chapel to offset the losses sustained by Hess Distributing. To mortgage all of the real property of a failing distributing business to provide funds to construct a mortuary, without a written contract or other indicia of debt or any formal corporate action by either corporation, can only indicate that Wilford and Betty Hess used the two corporations merely as a conduit through which to conduct their personal business ventures and that the separate identities of Wilford and Betty Hess and the corporations had ceased.

To adhere to corporate distinctions which the incorporators, directors and stockholders did not even recognize and follow, other than by maintaining separate accounting books for each corporation, would, in this case, produce substantial inequities. The mortgage which appellant received from Wilford and Betty Hess would be reduced to a second mortgage when, in fact, it was executed and recorded more than one year prior to that of respondent. Appellant acted in good faith and disbursed substantial amounts of cash in reliance upon its supposed first mortgage and should therefore have the priority which attaches to a prior mortgage. I.C. § 55–606; 55 Am.Jur.2d 406, Mortgages, § 343

(1971). U. S. Fuel had actual knowledge of the Continental mortgage when it took its mortgage to cover its antecedent debt.

Appellant next contends that the trial court erred in holding that there was no consideration for the mortgage given by Hess Distributing for the loan issued to Rose Chapel. With this contention we also agree. The consideration required to sustain a mortgage is the same as that required to sustain a simple contract, 59 C.J. S. Mortgages § 90, at page 134 (1949); Farris v. McCourry, 347 P.2d 797 (Okl. 1959), and may consist of either a detriment to the promisee or a benefit to the promisor. Day v. Mortgage Ins. Corp., 91 Idaho 605, 428 P.2d 524 (1967); Hopkins v. Ensign, 122 N.Y. 144, 25 N.E. 306 (1890); Re Clyde, 329 Pa. 552, 198 A. 640, 115 A.L.R. 1412 (1938); Farris v. McCourry, *supra*; Grant v. White, 103 Ariz. 257, 439 P.2d 828 (1968); Western Federal Savings & Loan Assn. of Denver v. National Homes Corp., 167 Colo. 93, 445 P.2d 892 (1968). Continental, and ultimately appellant, sustained a legal detriment by disbursing the loan proceeds, which disbursement standing alone constituted sufficient consideration. However, since the transactions of Hess Distributing were in fact the individual transactions of Wilford and Betty Hess, the additional element of benefit to the promisor was also present as Wilford and Betty Hess received the loan proceeds to use in constructing their mortuary. Moreover, even in the absence of our finding that Hess Distributing and Rose Chapel were the alter egos of Wilford and Betty Hess, there would be sufficient consideration to support the mortgage since it is not essential to the validity of a mortgagee that the mortgagor should have received the consideration. It is sufficient if the mortgagee part with consideration in reliance upon the mortgage. 9 Thompson, Real Property, § 4764, at page 439 (1958); 59 C.J.S. Mortgages § 88, at page 133 (1949); County Federal Savings & Loan Assn. v. Walsh Rights Corp., 19 Misc.2d 639, 187 N.Y.S.2d 722 (1959); Morigeau v. Lozar, 81 Mont. 434, 263 P. 985 (1928);

State Bank of Downs v. Criswell, 155 Kan. 314, 124 P.2d 500 (1942); John Davis & Co. v. Cedar Glen #Four, Inc., 75 Wash. 2d 214, 450 P.2d 166 (1969).

Appellant further assigns as error the trial court's finding that the mortgage to appellant was in fraud of creditors. Idaho Code § 55–906 provides:

"55–906. Transfers in fraud of creditors.—Every transfer of property, or charge thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor and their successors in interest, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

The intent required by Idaho Code § 55–906 is described in Idaho Code § 55–908 which provides:

"55–908.—Fraud is a question of fact.— In all cases arising under the provisions of chapters 5 to 9 inclusive, of this title, except as otherwise provided in the last section, the question of fraudulent intent is one of fact, and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration."

The parties stipulated that Wilford Hess executed the mortgage to appellant for the purpose of completing the mortuary with the anticipation and plan to use the profits from the mortuary to offset the losses of Hess Distributing. Such an action indicates not an intent to defraud but, to the contrary, an intent to satisfy all of his legal obligations. In view of the stipulation executed by the parties, to hold that Wilford and Betty Hess mortgaged the property in question with the intent to defraud respondent was clearly erroneous. *Cf.* Mohar v. McLelland Lumber Company, 95 Idaho 38, 501 P.2d 722 (1972).

It should be noted that this case is rather unusual in view of the stipulated facts, and

the holding in this case is predicated upon the facts as stipulated.

Reversed with directions to enter judgment in favor of appellant granting appellant's mortgage priority over that of respondent.

Costs to appellant.

DONALDSON, C. J., and SHEPARD, McQUADE and McFADDEN, JJ., concur.