732 P.2d 386

**Eugene BAKER dba Gene Baker Logging Co., Plaintiff-Respondent,**

v.

**Lewis R. KULCZYK, an individual, and Coeur D'Alene Leasing, Inc., and Forest Gold, Inc., Defendants-Appellants.**

No. 15943.

Court of Appeals of Idaho.

Feb. 4, 1987.

418

Jonathan W. Cottrell, Sandpoint, for defendants-appellants.

Randall W. Day, Bonners Ferry, for plaintiff-respondent.

SWANSTROM, Judge.

Eugene Baker sued Lewis Kulczyk, Coeur d'Alene Leasing, Inc., and Forest Gold, Inc., to collect amounts due under two contracts. Alleging that the two corporations were the alter egos of Lewis Kulczyk, Baker sought joint and several liability. The defendants counterclaimed for damages. The district court awarded Baker the unpaid balance due and denied the counterclaims. The court held the three defendants jointly and severally liable for the judgment.

The defendants appeal, raising the issues of whether the trial court erred in: (1) holding Kulczyk and Forest Gold liable on a contract between Baker and Coeur d'Alene Leasing; (2) holding Kulczyk and Coeur d'Alene Leasing liable on a contract between Baker and Forest Gold; and (3) refusing to admit into evidence an additional written agreement between Baker and Coeur d'Alene Leasing. We affirm in part, modify in part and remand.

### I

Gene Baker, doing business as Gene Baker Logging Co., had a contract with the United States Forest Service to purchase and remove timber from land known as the "Spread Dawson Sale." After partially performing the contract, Baker negotiated with Lewis Kulczyk for the assignment of Baker's interest in the contract to Kulczyk. The district court found that Kulczyk did not disclose he was negotiating for any corporation until the time came to close the agreement. At the conclusion of negotiations, Kulczyk prepared and presented to Baker a written agreement naming Coeur d'Alene Leasing, Inc., as the "buyer." According to the court's findings, Kulczyk asked Baker if he would object to his corporation being named as purchaser "for tax purposes," stating that "even though the contract was so made out he would be the performer of the contract." Baker assented to this and the contract was signed. Under this contract, Coeur d'Alene Leasing, Inc., was to pay Baker $400,000 in two installments. Baker received payments totaling $355,113. He sued Kulczyk and his corporations for the balance due.

Baker's complaint also contained a claim against the same defendants for $4,520 allegedly due on a separate oral contract between Baker and Forest Gold, Inc. After Coeur d'Alene Leasing took over the Spread Dawson Sale it subcontracted certain of the logging work to two other corporations owned and controlled by Kulczyk: Forest Gold, Inc., and Pleasant Valley Shops, Inc. About the same time Kulczyk and Baker orally agreed that Baker would do skidding work on the Spread Dawson Sale for which he would be paid $60 per thousand board feet. It is not disputed that Baker was paid for that work. However, Baker also claimed that in addition to the normal skidding work, Kulczyk asked him to do some work involving cutting and skidding of missed trees, cleanup, erosion control and site restoration required by the Forest Service on one part of the sale area. Baker claims that Kulczyk, Forest Gold and Coeur d'Alene Leasing are all liable for the payment of this $4,520 claim. The defendants contended that Baker had been fully paid for all the work he was requested to do, that the amount of the claim was unreasonable and that in any event only Forest Gold, Inc., could be found liable on this claim.

Kulczyk and his corporations responded to Baker's collection suit with various affirmative defenses and counterclaims alleging fraud, an accord and satisfaction and damages. Only one of defendants' claims is pertinent to this appeal and will be addressed later in this opinion.

As previously stated, the district court disregarded the separate identities of the defendant corporations and held all three defendants liable on the timber sale and personal service contracts. Kulczyk, Coeur d'Alene Leasing and Forest Gold contend that the findings of fact do not support the imposition of joint and several liability. We agree.

In general, a corporate status limits liability. I.C. § 30–1–25. For the court to disregard the corporate entity, two require-

ments must be met. First, there must "be such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. . . ." *Chick v. Tomlinson,* 96 Idaho 483, 485, 531 P.2d 573, 575 (1975) (quoting *Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc.,* 95 Idaho 599, 601, 514 P.2d 594, 596 (1973)). The second requirement is met by a showing that "if the acts are treated as those of the corporation an inequitable result will follow, . . ." *id.,* or that it would "sanction a fraud or promote injustice." *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 917, 591 P.2d 1078, 1084 (1979) (quoting *Tom Nakamura, Inc. v. G. & G. Produce Co.,* 93 Idaho 183, 457 P.2d 422 (1969)).

■The first requirement is clearly met in this case. Kulczyk is president and majority stockholder of the two defendant corporations. The corporations are involved in similar businesses, employ the same personnel and officers, and have identical Boards of Directors. Operations on the Spread Dawson Sale were subcontracted to Forest Gold and Pleasant Valley Shops, Inc., a third corporation dominated by Kulczyk. The subcontracts provided no compensation to the subcontracting corporations. Suffice it to say, without further detail, that the corporate identities do not exist apart from Kulczyk.

The second requirement, however, is not supported by the evidence at trial or by the findings of fact. In addition to what we have already recited, the evidence on the second requirement consisted of the following: (1) payments on the Spread Dawson Sale were made by both defendant corporations; (2) the contracts Kulczyk executed to subcontract logging work on the Spread Dawson Sale from Coeur d'Alene Leasing to Forest Gold and Pleasant Valley Shops, Inc., did not state any consideration to be paid the subcontractors; (3) Kulczyk, while testifying, often exhibited a disregard for the corporate entities by using first person singular pronouns such as "I" or "my;" and (4) Kulczyk owned a defunct corporation, Timberjacks, and could not remember what happened to the assets.

■Generally, the corporate identity has been disregarded by the courts in order to reach specific property, *Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc., supra; Minich v. Gem State Developers, Inc., supra;* or because of financial instability or undercapitalization of the defendant corporation. *Chick v. Tomlinson, supra.* Here, Baker suggests in his brief that the defendant corporations *may* not have sufficient worth to satisfy the judgment, and that Kulczyk will do everything possible to avoid payment. Thus, he argues that the judgment is justified because it removes Kulczyk's ability to transfer assets from one corporation to another. These assertions, while possibly true, are flawed. First, Baker presented no evidence of the financial health of either defendant corporation. Second, mere speculation that Kulczyk will improperly attempt to hide assets does not rise to a showing that "injustice will result." The second part of the two-part test for disregarding corporate identity would be meaningless if it were satisfied by the general possibility that assets might be transferred fraudulently. Such a general possibility exists in every case. A more particular showing is required. Moreover, adequate legal remedies are available to reach assets that might be fraudulently transferred. A showing of the need for vigilance in collecting the judgment is not a showing of inequity or injustice. Evidence of facts showing inequity or injustice must be adduced in the trial court. Baker's proof, while sufficient on the first requirement, failed to show an injustice resulting from recognition of the corporate entities.

■While the district court's findings of fact are all supported by substantial evidence, those findings are not sufficient to establish that injustice will result by honoring the corporate entities. Based on the present record, we cannot say that because Baker was persuaded to enter into a contract with Coeur d'Alene Leasing, rather than Kulczyk personally, an inequitable result will follow. Baker did not allege or testify that he was induced by fraud or

misrepresentation to contract with the corporation.

■ Baker did not seek to have the written contract reformed to add Kulczyk's name as a buyer of the Spread Dawson Sale. Due to the statute of frauds, I.C. § 9–505(2), Kulczyk could not be regarded as having given an unwritten guaranty of Coeur d'Alene Leasing's performance. Although Baker argues that it is inequitable to apply the statute of frauds, the next section of our opinion shows how Baker himself invoked another statute of frauds, contained in the Uniform Commercial Code, to prevail against one of Kulczyk's counterclaims. Thus, Kulczyk's reliance upon a similar statute in defending against personal liability cannot be deemed inequitable or unjust.

■ As the Idaho two-part test signifies, it is not enough for a creditor merely to show a close relationship between the corporation and the individual. The creditor also must show harm or a likelihood of harm. Here, there is no evidence that the corporations were formed without adequate initial capital or were created to evaded honest obligations.

■ Coeur d'Alene Leasing is, of course, still liable for that portion of the judgment based on the timber sale. Forest Gold is still liable for that portion based on the services contract.

## II

■ Next we address the admissibility of defendants' exhibit F, purported to be a photocopy of a signed original written agreement between Coeur d'Alene Leasing and Baker. The defendants sought to have exhibit F admitted as evidence of this contract. Under the terms of this agreement, Baker, who owned a veneer and pulp mill, agreed to purchase a maximum of two million board feet of pulp logs from Coeur d'Alene Leasing. The pulp was to come from the Spread Dawson Sale. The defendants claimed an offset for damages caused by Baker's failure to purchase the full contract amount of pulp logs.

The defendants first sought to admit the document as a business record of Coeur d'Alene Leasing. The district court, noting the defendants could not show how, where or when the copy was made, refused admission of the exhibit. Later, after further foundation, the court again denied admission under the Business Records Act. The court found the requisite necessity and trustworthiness which ordinarily justifies admission of business records to be lacking. *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983); *Curiel v. Mingo*, 100 Idaho 303, 597 P.2d 26 (1979).

Kulczyk's secretary testified that this document was received from Baker in the mail. Only Kulczyk's own testimony that this document replicated the original was offered to authenticate the document. He testified that he saw Baker sign the original which Kulczyk presumed was retained by Baker. Although Baker admitted that the signature resembled his own, he testified that he had never seen or signed such a document. The trial court clearly was not satisfied with the authenticity of this document. We conclude that the court did not err in refusing to admit exhibit F under the Business Records Act.

■ Admission of the document was also sought under the Photographic Copies of Business Records as Evidence Act, I.C. § 9–417. The court refused admission noting that the copy was not prepared by the offering parties in the course of their business and that the origin of the copy could not be satisfactorily established. The defendants contend that the court erred by utilizing a best evidence analysis when considering the Photographic Copies of Business Records as Evidence Act, which gives copies the status of originals. We are unconvinced. Again, the court was not satisfied with the authenticity of the document. It was not shown that this record had been reproduced by either party in the regular course of business. We find no error in the denial of admission under I.C. § 9–417.

Without the written pulp log agreement, the defendants were left with the allegation of an oral contract. The court found

that any such oral contract would violate the statute of frauds embodied in I.C. § 28–2–201(1). This conclusion has not been challenged.

In summary, we affirm as to the amount of damages awarded. However, we reverse as to the personal liability of Lewis Kulczyk. We direct that the judgment be modified to limit the liability of Coeur d'Alene Leasing to the amount awarded to Baker on the Spread Dawson Sale agreement. The liability of Forest Gold, Inc., shall be limited to that amount awarded to Baker on the separate services contract. The judgment, as modified, will bear interest at the judgment rate from the date of the original judgment. No costs or attorney fees are awarded on appeal.

WALTERS, C.J., and BURNETT, J., concur.