## (June 19, 1969)

■ KOLMER-MARCUS, INC., Appellant, v. DAVID E. WINER, as Executor of WILLIAM KOLMER, Deceased, Respondent, et al., Defendant.

MEMORANDUM. Order entered January 24, 1969 pursuant to CPLR 7503 (subd. [a]), directing arbitration, is affirmed, with $30 costs and disbursements. Special Term has correctly construed the option agreement dated December 31, 1954 entered into between defendant-respondent's testator and the plaintiff. That agreement established the purchase price of $120,000

only until November, 1955. Thereafter the purchase price was to be fixed annually each November by mutual agreement in writing and if the parties failed to agree, the price was to be fixed by arbitrators. The price-fixing procedures were not followed during the life of the testator. Plaintiff, although not a party to the agreement, was a beneficiary thereunder and the alter ego of Jack Marcus and other members of the Marcus family. It is plaintiff who has commenced this action seeking to enforce the agreement.

A dispute has arisen between the corporate plaintiff and decedent's executor concerning the price to be paid for the stock of the corporate plaintiff owned by the decedent at the time of his death. Kolmer's executor stands in the place of his testator and is entitled to enforce the contract arbitration provision. (See *Matter of Buccini* v. *Paterno Constr. Co.*, 253 N. Y. 256, 259.) Special Term correctly held that the price for decedent's stock must be determined by arbitration pursuant to the terms of the agreement.

Special Term properly observed: " The well-settled rules of construction as between the conflicting interpretations of the terms and expressions involved herein require due consideration to all parts of the subject agreement, so as to give effect and meaning to the intentions of the parties which best accords with the sense of the remainder of the agreement as expressed in the unequivocal language employed." In this connection, it is noted that the stock option provisions of the agreement have but one dominant purpose, i.e., to provide a means of smooth transition and fair evaluation of Kolmer's interest at the time of his death, and the agreement should be construed to effectuate that purpose. Accordingly, it is untenable to argue that the arbitration process was restricted to the lifetime of Kolmer, when it had no real meaning, and rejected at the time of his death, when most meaningful. Although not initially raised at Special Term, plaintiff-appellant now urges (1) that the plaintiff corporation not a signatory to the agreement is not bound by its terms to arbitrate the issue of purchase price; (2) that Jack Marcus and the other Marcus family signatories are necessary parties; and (3) that by his laches in demanding arbitration, defendant executor waived his right to demand arbitration. These issues are entitled to little consideration when raised for the first time on appeal (see *Rentways, Inc.* v. *O'Neill Milk & Cream Co.*, 308 N. Y. 342, 349; *Dunning* v. *Dunning*, 300 N. Y. 341) and, in any event, clearly lack merit.

EAGER, J. P. (concurring). I concur in the affirmance of the order of Special Term. The dissent, discussing at length the matter of the alleged intent of the parties in fixing the price of $120,000 for the stock, states that " there is a complete failure of evidence to indicate that it was ever the desire of the parties to revise the figure of $120,000 "; and that " if there was an agreement between them, then their heirs were bound whether the agreed upon price was satisfactory to them or not." If an inquiry with respect to the intent of the parties in connection with the price is necessary and relevant, or if there is an ambiguity in the agreement bearing upon the right of arbitration, then a hearing would be required.

Generally, the fulfillment of conditions precedent to the right of arbitration is to be determined by the court. (See *Matter of Wilaka Constr. Co.* [*N. Y. C. Housing Auth.*], 17 N Y 2d 195, 198.) If the parties contend that there is an issue of fact as to whether such right exists, they should be afforded the opportunity of a hearing, with the right to present evidence and to examine and cross-examine witnesses. (See *Matter of Princeton Rayon Corp.* [*Gayley Mill Corp.*], 309 N. Y. 13, 14; *Matter of Fineman* [*Korman*], 282 App. Div. 937; *Matter of Public Affairs Committee* [*Dist. 65, Retail, etc. Union*], 15 A D 2d 645.)

But here the parties contend that there is no issue of fact bearing upon the right of arbitration; that the questions involved should be determined on the basis of the alleged unambiguous provisions of the agreement. In any event, on the undisputed facts, I conclude that the plain terms of the agreement are construable as a matter of law to require arbitration of the existing dispute as to the price. The parties agreed that the price "shall be $120,000.00 or such other sum, in accordance with the terms of this agreement as may be agreed upon and fixed in writing and subscribed or initialled by the parties hereto. During the month of November, 1955, and annually thereafter, for the term of this agreement, the First Party and the Second Party shall fix the price at which the shares of stock hereinabove described, owned by the First Party, shall be sold. Said sum so agreed upon shall be the price of the shares for the period commencing September 1, 1955. It is understood and agreed that the purchase price herein is an arbitrary figure. The actual value of the stock is its book value, as reflected on the corporate books."

The aforesaid provisions clearly show the intent and the understanding of the parties. It was agreed that the sum of $120,000 was "an arbitrary figure" and that the parties "shall" yearly fix a sales price for the stock. On this basis, the parties expressly agreed that the price shall be fixed by arbitration if they "shall fail in any succeeding [yearly] period or periods [beginning in 1955] to agreed upon such price".

Here, as a matter of undisputed fact, the parties did "fail" to agree upon a price — there was no agreement as to price in any yearly period subsequent to the making of the agreement — and, thus, under the terms of the agreement, there exists the right of arbitration. I conclude that the cause of the failure to agree is immaterial. The party of the first part had the right to rely upon the plain provisions of the agreement that the price would be fixed by arbitration if there was no yearly agreement as to the price. Certainly, it was within the contemplation of the parties that the right of arbitration would continue upon the death of the first party, and upon his death, his executor now succeeds to the right of arbitration since the parties failed to agree upon a price.

CAPOZZOLI, J. (dissenting). Plaintiff corporation in this action is seeking specific performance of an agreement giving it the option, exercisable on the death of William Kolmer, to purchase his stock in the plaintiff corporation. The defendant, David E. Winer, as executor of said William Kolmer, deceased, does not contest the right of the plaintiff to specific performance of this contract. The issue arises from the disagreement between the parties as to the proper purchase price to be paid for the stock.

The agreement providing for the option was entered into on the 31st day of December, 1954, between William Kolmer, now deceased, first party, and Jack Marcus, Helen Marcus, William Marcus and James Marcus, second party. In essence, it provided for the right of plaintiff corporation to purchase, at its option, the shares of stock of plaintiff corporation, which were owned by the decedent, Kolmer, at the time of his death, at the price set forth in the agreement. This agreement resulted from the reorganization of a men's clothing shop which was originally operated as a copartnership consisting of the deceased, Kolmer, and members of the Marcus family. The partnership was discontinued and the corporation was organized and continued the business. At the time that the assets and business of the partnership were transferred to the plaintiff corporation 250 shares of common stock were issued to Kolmer. These are the shares which are the subject of this litigation.

The particular paragraphs of the agreement which discuss the price are the following: "SECOND: The price and terms of payment agreed upon herein shall be final, binding and conclusive upon the parties hereto, their heirs, execu-

tors, administrators, successors and assigns. (A) The purchase price of the shares of stock shall be $120,000.00 or such other sum, in accordance with the terms of this agreement as may be agreed upon and fixed in writing and subscribed or initialled by the parties hereto. During the month of November, 1955, and annually thereafter, for the term of this agreement, the First Party and the Second Party shall fix the price at which the shares of stock hereinabove described, owned by the First Party, shall be sold. Said sum so agreed upon shall be the price of the shares for the period commencing September 1, 1955. It is understood and agreed that the purchase price herein is an arbitrary figure. The actual value of the stock is its book value, as reflected on the corporate books. However, in view of the fact that the First Party is one of the founders of the business, has devoted more than thirty years' service to the corporation and its predecessors in interest, enjoys an esteemed and valuable reputation in the retail clothing business, is an essential and key employee, and has given an irrevocable option to purchase and pay for the stock over a ten-year period, the parties are disregarding the actual value of the stock and placing a value thereon based upon the foregoing considerations. (B) In the event that the First Party and the Second Party shall fail in any succeeding period or periods to agree upon such price, the parties hereby agree that such price shall be fixed by arbitration in the manner hereinafter set forth". Language then follows providing for appointment of arbitrators, etc.

It is noted that, at the same time that the agreement was entered into, an employment agreement was also executed between Kolmer and plaintiff corporation, whereby the former was assured of lifetime employment by the latter. However, it is clear that this employment agreement has no bearing on the manner in which the language of the subject agreement should be construed. The subject agreement is complete on its face and the language is particularly explicit and clear.

The plaintiff corporation contends that the price which it is obligated to pay for the shares of stock, under the contract, is $120,000 and none other, because there is no "other sum   *  *   *   agreed upon and fixed in writing and subscribed or initialled" by the original parties. Nor is it claimed by the defendant that the parties had, at any time, before the death of Kolmer, attempted to change the price and could not agree on a new one.

As against the plaintiff's contention, the defendant argues that the agreed price was not, as stipulated in the agreement, $120,000, but remained open for determination by arbitrators on the death of the testator.

It seems to me that the agreement entered into between the individuals heretofore mentioned, and to which the plaintiff corporation was not a party, clearly shows that the parties intended to fix their own purchase price. They fixed it at $120,000, irrespective of the book value, because of the considerations which were set forth in the agreement and they said, further, that the purchase price, as fixed by them, was binding upon their heirs, etc. If it had been the intention of the parties to give to their respective heirs or representatives the right to revise the purchase price agreed upon by the parties themselves, it would have been a perfectly simple matter to set that fact forth in the original agreement. But this was not their intention. They specifically arrived at their own purchase price and then said that that price was "final, binding and conclusive upon the parties hereto, their heirs, executors, administrators, successors and assigns."

It is true that the parties themselves provided for revision of the purchase price if that was desired, and then further provided for the appointment of arbitrators in the event that they could not agree on the revised price. But there is a complete failure of evidence to indicate that it was ever the desire

of the parties to revise the figure of $120,000. Yes, a revision could be had if it had been desired by one party or the other. But there is nothing in the agreement to prevent the parties from continuing to accept the $120,000 figure as a figure perfectly satisfactory to both of them.

What is the function of the arbitrators if they are appointed? They only came into being if the original parties could not agree. If there was agreement between them, then their heirs were bound whether the agreed upon price was satisfactory to them or not. They had nothing to say about it. As a matter of fact, Kolmer, if he had desired, could have sold the stock at a nominal price to the corporation. In fact, he could have given it away if he wanted to do so and the defendant could do nothing about it. If the logic of the defendant is correct, then the Marcus family would have had the right upon the death of Kolmer to demand arbitration in an effort to reduce the price as set between the parties. This would be no more proper than is the position of the executor that he could revise it upward.

We are not dealing with a general clause which applied to all provisions of the written agreement. This is a limited arbitration clause. The only thing which was arbitrable was the purchase price if the parties sought to change the original price of $120,000 and could not agree on the new price. There is no claim that, at any time before the death of Kolmer, there actually was an attempt by the parties to revise the figure which resulted in disagreement. In *Madison Hill Corp.* v. *Continental Baking Co.* (21 A D 2d 538, 540), the court used language which is particularly pertinent here. "The lease involved in this proceeding, and under which an adjudication of the rights of the parties is sought, contains no broad general agreement to arbitrate any and all disputes between the parties. The arbitration clauses are limited ones — the parties agreeing to arbitrate only in certain specific circumstances."

Since defendant is the one who seeks arbitration the burden is upon him to show that there exists an arbitrable dispute. But there is a complete failure on his part to do so. No arbitrable issue exists within the limits of the restricted arbitration clause. (*Matter of Uddo [Taormina]*, 21 A D 2d 402.)

In the last cited case (p. 405), Mr. Justice Steuer, writing for the majority, said: "one can only be compelled to arbitrate when one has agreed to do so * * * whether one has so agreed is a question for the court".

Later, on the same page, we find: "it [arbitration clause] only applies where the board is 'unable' to take effective action. There is no showing of any such inability * * * the petitioner has not shown any issue which is arbitrable under the agreement."

There is nothing peculiar or extraordinary about an arbitration agreement. The same rules of construction and interpretation apply to such agreements as apply to other agreements generally. It is settled law that the construction of an unambiguous written contract is a question of law for the court. (*Stone* v. *Goodson*, 8 N Y 2d 8.) Further, "a court may not, under the guise of interpretation, make a new contract for the parties or change the words of a written contract". (*Rodolitz* v. *Neptune Paper Prods.*, 22 N Y 2d 383, 386.) The dispute, if there had been one, was arbitrable only between the original parties to the agreement.

The rights and obligations of the parties were fixed at the time of the death of Kolmer on August 8, 1967. The price fixed by the individuals was binding upon the defendant. Hence, the defendant cannot resort to his refusal to abide by the price fixed by his testator to create an arbitrable dispute.

The argument that the purchase price was to be fixed by arbitration on the death of William Kolmer finds no support in the language of the agreement. The fact that the defendant argues that such is the interpretation which should

be put upon it, does not create an issue. "Mere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact. It has long been the rule that when a contract is clear in and of itself, circumstances extrinsic to the document may not be considered (*General Phoenix Corp.* v. *Cabot*, 300 N. Y. 87) and that where the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law and no trial is necessary to determine the legal effect of the contract [citing cases]." (*Bethlehem Steel Co.* v. *Turner Constr. Co.*, 2 N Y 2d 456, 460.)

It is, of course, true that if, at the time of the death of Kolmer, differences existed between him and the Marcuses, concerning the purchase price of the stock, which differences were then under discussion, arbitration would have been the proper tribunal and the executor would have succeeded to the right of Kolmer to arbitrate the differences. But this is not the situation. There were no differences existing between the original parties to the agreement at the time of the death of Kolmer and, therefore, the executor is strictly limited to the rights which the testator had under the contract at the time of his death, because "The language of the contract must control". (*Janos* v. *Peck*, 21 A D 2d 529, 533.) The rights of all the parties were then defined and nothing could be added to them or subtracted. The arbitration provision expired on the testator's death because it was not invoked by him prior to his death.

In *Matter of Buccini* v. *Paterno Constr. Co.*, (253 N. Y. 256, 258) Chief Judge CARDOZO said: " Death of the contractor has not nullified the contract in the sense of emancipating the claimant from the restraint of its conditions. They limit her at every turn. She cannot stir a step without reference to the contract, nor profit by a dollar without adherence to its covenants ".

Again (pp. 259–260) we find: " Arbitration is a means for the settlement of differences. Those who succeed to the differences succeed also to the means."

The concurring opinion says: " Here, as a matter of undisputed fact the parties did ' fail ' to agree upon a price ". This is incorrect. The parties did agree upon a price and it was $120,000. Unless the defendant can show that the parties had actually tried to arrive at another price and failed, he cannot demand arbitration.

For the reasons above set forth, I dissent and vote to reverse. ·

Markewich, Nunez and Bastow, JJ., concur in Memorandum by the court; Eager, J. P., concurs in memorandum; Capozzoli, J., dissents in opinion.

Order affirmed, etc.