591 P.2d 1078

Barry C. MINICH and Donna J. Minich, husband and wife, Plaintiffs-Respondents,

v.

GEM STATE DEVELOPERS, INC., Frank E. Marcum and Bertha G. Marcum, Defendants-Appellants,

and

Thomas G. Smith and Thomas G. Smith, Inc., Defendants.

No. 12468.

Supreme Court of Idaho.

Feb. 16, 1979.

912

Dale G. Higer, of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for defendants-appellants.

Harold Q. Noack, Jr., Boise, for plaintiffs-respondents.

McFADDEN, Justice.

This action was brought by plaintiffs-respondents Barry and Donna Minich, husband and wife, for specific performance of a contract to sell a suburban lot and custom-built house. Defendants-appellants are two corporations, Gem State Developers, Inc., and Thomas G. Smith, Inc., and three individuals, Frank Marcum, Bertha Marcum, and Thomas G. Smith. Gem State Developers, Inc. is an Idaho corporation engaged in residential real estate development. Thomas G. Smith, Inc., is an Idaho corporation engaged in constructing houses on property owned by Gem State Developers, Inc., with financing obtained by Gem State Developers, Inc. Frank Marcum and Bertha Marcum are officers, directors, and the controlling shareholders of both corporations. Thomas G. Smith, president and co-owner of Thomas G. Smith, Inc., at the time this dispute arose, has since left for California. He has never appeared in this action and is not involved in this appeal.

Two written contracts are involved here. The first was entered into in October 1974, and named as parties "Thomas G. Smith and Valana Sue Smith and Frank E. Marcum and Bertha Marcum" as the "Contractors" and respondents as the buyers. The contract was executed on behalf of the "Contractors" by Thomas G. Smith, Inc., without specifying which individual had signed it or in what capacity it had been signed. This contract provided for the construction of a custom-built home and the sale of the home and lot to respondents at

the price of cost plus ten percent. The contract also provided for the sale to respondents of a "temporary" home, owned by Gem State Developers, Inc., for occupancy during the period of construction of the new house. When the new house was completed, respondents were to reconvey the "temporary" house back to the "Contractors." The second contract was entered into in April, 1975, when the new house was nearing completion. This contract was executed by respondents as buyers and by Thomas G. Smith, Inc., as seller. It provided for the sale of the house and lot at the price of $55,000, and set the closing date for the sale as May 1, 1975.

On May 1, 1975, the new home was not yet complete. But because the "temporary" house had already been sold to new owners who were to take possession May 1, 1975, respondents moved into the new house. In the attempt to finalize the transaction, respondents presented the April 1975 contract to Marcum. He repudiated this contract, contending that Thomas G. Smith had no authority to make such an agreement. Marcum instead insisted upon the earlier contract price of cost plus ten percent, which he claimed amounted to $70,223.45. He then ordered all work on the house stopped and refused to close the sale. Respondent's lender thereafter cancelled its loan, and respondents brought this action to specifically enforce the April 1975 contract at its price of $55,000.

After a trial to the court sitting without a jury, the court found that respondents and Thomas G. Smith, Inc., had entered into both contracts, with the April 1975 contract setting the final selling price. The court found that Thomas G. Smith had authority to enter into the contracts on behalf of the corporation. Specific performance was refused, however, because of the difficulties of judicial supervision over the completion of the custom built home. Instead the court rescinded the entire transaction and restored the parties to their precontract positions. Respondents were awarded restitutionary damages in the amount of $9,012.81 less the amount of $3453.42 for the reasonable rental value for the period in which they occupied the new house. The court also awarded respondents attorney fees in the amount of $4,250.00. Judgment was entered against Thomas G. Smith and Thomas G. Smith, Inc.; against Frank Marcum and Bertha Marcum individually for failing to properly incorporate Thomas G. Smith, Inc.; and against Gem State Developers, Inc., as the alter ego of Frank and Bertha Marcum.

On appeal, appellants challenge the personal liability of Frank and Bertha Marcum, the corporate liability of Gem State Developers, Inc., and the award of attorney fees to respondents.

The first issue on appeal concerns the district court's conclusion that Frank and Bertha Marcum are personally liable for the obligations of Thomas G. Smith, Inc., under I.C. § 30–110, for failing to adhere to the statutory mandates regarding incorporation. I.C. § 30–110 provides that

Conditions precedent to beginning business—Penalty for violation.—1. A corporation formed under this act shall not incur any debts or begin the transaction of any business, except such as is incidental to its organization, or to the obtaining of subscriptions to or the payment for its shares until a triplicate original of the articles of incorporation has been filed for record in the office of the county recorder as provided in section 30–108.

2. If a corporation has transacted any business in violation of this section, the officers who participated therein and the directors, except those who dissented therefrom and caused their dissent to be filed at the time in the registered office of the corporation, or who, being absent, so filed their dissent upon learning of the action, shall be severally liable for the debts or liabilities of the corporation arising therefrom.

The place of filing is controlled by I.C. § 30–108, which provides that a triplicate original of the articles of incorporation "shall then be filed for record in the office of the county recorder of the county in which the registered office of the corporation is situated . . . ." Appellants did

not file a triplicate original of the articles of incorporation with the county recorder of Ada County, the location of the registered office of Thomas G. Smith, Inc. Nevertheless they assert three arguments to the effect that I.C. § 30–110 cannot form the basis of their individual liability.

The first argument is that I.C. § 30–110 is unconstitutional as applied to Frank and Bertha Marcum. It is contended that Art. 11, § 17 of the Idaho Constitution[1] forbids imposition of the statutory liability upon appellants because they are shareholders of Thomas G. Smith, Inc., and therefore immune from any liability in excess of the amount of the unpaid portions of the par value of their stock subscriptions.

In ruling on this constitutional challenge to I.C. § 30–110, this court is guided by certain basic principles. In *Caesar v. Williams*, 84 Idaho 254, 263, 371 P.2d 241, 245 (1962), it was said:

> In considering the question of the constitutionality of these acts, certain fundamental rules at all times must be kept in mind. The burden of showing the unconstitutionality of a statute is upon the party asserting it. *Eberle v. Nielson*, 78 Idaho 572, 306 P.2d 1083; *Rich v. Williams*, 81 Idaho 311, 341 P.2d 432. This court is without power to invalidate or nullify a constitutional act of the legislature; if the legislation does not clearly violate the Constitution, this court must and will uphold it. *Padgett v. Williams*, 82 Idaho 114, 350 P.2d 353. Every reasonable presumption must be indulged in favor of the constitutionality of a statute. *Robinson v. Enking*, 58 Idaho 24, 69 P.2d 603; *Idaho Gold Dredging Co. v. Balderston*, 58 Idaho 692, 78 P.2d 105.

The court in *State ex rel. Brassey v. Hanson*, 81 Idaho 403, 409, 342 P.2d 706, 709, quoting from other opinions, stated:

> " 'It is fundamental that the judicial power to declare legislative action invalid upon constitutional grounds is to be exercised only in clear cases. . . . ' [cita-

tion] *Petition of Mountain States Telephone & Tel. Co.*, 76 Idaho 474, 480, 284 P.2d 681, 683.

" 'In the case of statutes passed by the legislative assembly and assailed as unconstitutional the question is not whether it is possible to condemn, but whether it is possible to uphold; and we stand committed to the rule that a statute will not be declared unconstitutional unless its nullity is placed, in our judgment, beyond reasonable doubt . . . . [citations]' *Keenan v. Price*, 68 Idaho 423, 433, 195 P.2d 662, 667."

■ In applying these principles to the case at bar, the court first notes that Idaho Const. Art. 11, § 17 relates only to stockholders, while the statute is narrowly drawn to impose liability only upon the directors and those officers who participated in the unlawful business. On its face, then, the statute could in no way be said to violate the prohibitions of Art. 11, § 17. But in those situations where, as here, the protagonists are at the same time officers, directors, and shareholders, the question arises as to the applied validity of the statute. Even in these situations, however, we conclude that I.C. § 30–110 is not repugnant to the Idaho Constitution. The statutory liability is predicated upon misconduct by a director or officer and is completely unrelated and irrelevant to ownership of stock in the corporation. The intent and purpose of the statute is to impose liability upon the officers and directors in their capacity as officers and directors for breach of their corporate duties regardless of whether or not they also hold stock. Accordingly, this court rejects appellants' constitutional challenge to the statute, and we hold that whenever shareholders elect to actively participate in the corporate affairs as officers or directors, they will be responsible for their actions as officers or directors.

■ Appellants' second argument in the assignment of error directed to the trial court's conclusion that they were personally

---

1. § 17. Liability of stockholders—Dues.—Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable in any amount over or above the amount of stock owned by him.

liable under I.C. § 30–110 is that the statutory language itself precludes liability unless the officers or directors actually participated in the unlawful business. It is appellants' theory that the language "officers who participated therein and the directors, except those who dissented therefrom" must be construed together such that unless there was actual participation by the directors the statute does not apply. Appellants argue that because they did not agree to or know of the April 1975 contract, they cannot be held accountable therefor.

In rejecting appellants' suggested construction of the statute, it is important to emphasize that "[t]his Court has consistently adhered to the primary canon of statutory construction that where the language of the statute is unambiguous, the clear expressed intent of the legislature must be given effect and there is no occasion for construction." *State v. Riley*, 83 Idaho 346, 349, 362 P.2d 1075, 1076 (1961); *Swensen v. Buildings, Inc.*, 93 Idaho 466, 463 P.2d 932 (1970). Since the statute clearly imposes liability upon "the officers who participated therein" and "the directors, except those who dissented therefrom," there is no need for this court to speculate on whether or not a director must also participate in the unlawful business before he may be held liable. The statute does not require such participation, and this court is without power to read this requirement into the statute. *Roe v. Hopper*, 90 Idaho 22, 408 P.2d 161 (1965). This court therefore declines to accept appellants' interpretation of I.C. § 30–110, and we conclude that the trial court properly found that as directors who had not filed a dissent, appellants Frank and Bertha Marcum were personally liable whether or not they actually transacted the unlawful corporate business.

Appellants' third argument regarding this issue is that respondents are estopped to deny the corporate existence of Thomas G. Smith, Inc., since they knew at all times that they were dealing with the corporation as a corporation. Appellants rely upon *Allen Steel Supply Co. v. Bradley*, 89 Idaho 29, 402 P.2d 394, 403 P.2d 859 (1965), and *Jolley v. Idaho Securities, Inc.*, 90 Idaho 373, 414 P.2d 879 (1966), for the proposition that estoppel constitutes an effective defense to personal liability under I.C. § 30–110. Our review of these cases, however, indicates that the issue has not yet been authoritatively decided.

In *Allen Steel*, this court held that there can be no *de facto* corporation where the articles of incorporation had not been filed with the secretary of state and where no certificate had been issued. Thus there was no corporate existence either *de jure* or *de facto*. The purported "incorporators" had also failed to comply with the secondary filing requirements of I.C. § 30–110, but this was irrelevant to the court's decision to hold the principals personally liable. Any mention in *Allen Steel* of the potential defense of estoppel to liability under I.C. § 30–110 is mere *dictum* and is to be disregarded.

*Jolley* was an action by an individual against a corporation for rescission of a contract to exchange deeds to real property. The corporation had failed to file a certified copy of its articles of incorporation in the office of the county recorder of the county where the real property was situated as required by I.C. § 30–108(4), and in addition it had failed to comply with I.C. § 30–110. In affirming the trial court's decision denying recission of the contract to exchange deeds, this court held that the failure to comply with I.C. § 30–108(4) did not render the corporate deed void. No discussion was necessary as to the impact of I.C. § 30–110, and none was given.

█ Since no prior decision stands to the contrary, this court today holds that the defense of estoppel has no application to liability asserted under I.C. § 30–110. This liability is not predicated upon the theory of piercing the corporate veil or upon distinctions between *de facto* or *de jure* corporations, to which estoppel might in certain instances apply. Rather, the statute sets forth explicit requirements as conditions precedent to the transaction of corporate business and provides for definite penalties for failure to comply. The defense of es-

toppel under these circumstances would effectively emasculate any remedy intended by the legislature in enacting I.C. § 30–110 and would defeat the statutory purpose. As concisely stated in 18 Am.Jur.2d, *Corporations*, § 76, p. 617:

> [n]o estoppel arises in the case of statutory liability from the fact that creditors dealt with the corporation as such, to prevent them from suing under a statute imposing liability on stockholders or officers in addition to that resting on the corporation, for failure to perform certain things; *to allow an estoppel in such a case would nullify the statute.*

(Emphasis ours.) The Supreme Court of Illinois in *Loverin v. McLaughlin*, 161 Ill. 417, 44 N.E. 99 (1896), was faced with the issue of the liability of officers and directors under a statutory provision making them personally liable for obligations of the corporation incurred prior to the recording in the recorders' office of a completed certificate of incorporation from the secretary of state. The court declared:

> [T]o say that the creditor is estopped from suing the officers and directors because he contracted with the corporation or pretended corporation is to make the [statutory] provision in his favor entirely nugatory. Section 18 imposes the liability upon the officers and directors, because, being prohibited from proceeding to business, they permit business to be commenced and liabilities to be incurred in violation of their duty.

*Id.* 44 N.E. at 105. Other cases adopting the rule that estoppel can not be asserted against a claim predicated upon statutory directors' liabilities include *Cook v. J. I. Case Plow Works Co.*, 85 Fla. 421, 96 So. 292 (1923); *Charles v. Young*, 74 Fla. 298, 76 So. 869 (1917); *Ragland v. Doolittle*, 100 Miss. 498, 56 So. 445 (1911); *Hanson v. Martin*, 192 Wis. 40, 211 N.W. 790 (1927). Since the requirements and duties of I.C. § 30–110 are clear and unambiguous, we conclude that the doctrine of estoppel has no applicability. Accordingly, we affirm the district court's judgment imposing personal liability upon Frank and Bertha Marcum for the obligations of Thomas G. Smith, Inc.

Appellants next assign error to the district court's conclusion that Gem State Developers, Inc., was the alter ego of Frank and Bertha Marcum. Appellants' argument proceeds on two grounds: first, that as a matter of law the alter ego doctrine cannot be utilized in reverse so as to hold a corporation liable for the acts of its controlling shareholders; and second, that there was insufficient evidence for the trial court to disregard the corporate identity of Gem State Developers, Inc.

 Regarding the trial court's finding of fact that the Marcums treated the corporation as their alter ego, it is the elementary rule that such finding will not be disturbed on appeal if it is supported by substantial and competent evidence. *See* I.R. C.P. 52(a); *Skelton v. Spencer*, 98 Idaho 417, 565 P.2d 1374 (1977); *Idaho Water Resource Board v. Kramer*, 97 Idaho 535, 548 P.2d 35 (1976); *Baker v. Ore-Ida Foods, Inc.*, 95 Idaho 575, 513 P.2d 627 (1973). Based on the record, we conclude that there was substantial and competent evidence to support this finding. Most important, and all that need be discussed here, is the contract itself, naming as parties Frank and Bertha Marcum individually as "Contractors." The contract called for the conveyance of a suburban lot which the Marcums did not own and could not transfer. Title to the property was held by the corporation, Gem State Developers, Inc., yet the Marcums contracted in their individual capacities to sell and convey the lot. In addition, the "temporary" home which respondents were to purchase and occupy during the construction of the custom home was owned by the corporation, yet again the Marcums personally contracted to sell and later to reacquire this property. These facts alone indicate that the Marcums themselves disregarded the corporateness of Gem State Developers, Inc. and considered their personal business transactions identical to those of the corporation. Accordingly, the trial court's finding will not be disturbed.

From this finding the trial court concluded that Gem State Developers, Inc., is also

liable for the debts and obligations of the Marcums, and entered judgment accordingly. With this judgment we concur.

■ As this court stated in *Tom Nakamura, Inc. v. G. & G. Produce Co.*, 93 Idaho 183, 457 P.2d 422 (1969), quoting with approval from *Hayhurst v. Boyd*, 50 Idaho 752, 300 P. 895 (1931):

> " 'To warrant casting aside the legal fiction of distinct corporate existence . . . it must also be shown that there is such a unity of interest and ownership that the individuality of such corporation and such person had ceased; and it must further appear from the facts that the observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice.' "

93 Idaho at 185, 457 P.2d at 424. See also *Surety Life Insurance Co. v. Rose Chapel Mortuary, Inc.*, 95 Idaho 599, 514 P.2d 594 (1973); *Jolley v. Idaho Securities, Inc., supra.* The facts and circumstances of the instant case are sufficient to warrant casting aside of the separate corporate existence. Appellants contend, however, that this would be a misapplication of the alter ego doctrine, because such doctrine is only available to pierce the corporation to reach the individual and cannot be used to go beyond the individual to reach the corporation which he controls. For this proposition appellants cite but one authority, *Olympic Capital Corp. v. Newman*, 276 F.Supp. 646, 655 (D.C.Cal.1967), where it was said:

> The court has been able to find no situation in which the doctrine of alter ego has been applied to a fact situation such as is presented to the court in this case. Alter ego would appear to be limited to the situation where there is reason to *disregard a corporate entity* to reach individuals, it has no applicability in disregarding the existence of an individual to reach corporate assets.

In answer to appellants' argument, we adopt reasoning of *Central Nat'l Bank & Trust Co. of Des Moines v. Wagener*, 183 N.W.2d 678, at 682 (Iowa 1971), the Supreme Court of Iowa's response to this identical issue:

> The *Olympic Capital Corporation's* case presented a Federal District Court venue problem arising out of a very complicated financial fact situation. Whatever validity the quoted observation may have had for the case in question, it cannot be accepted in this jurisdiction, for plaintiff's argument that assets may be traced from a corporation to an individual but not vice versa. This court and other courts have disregarded the claimed corporate ownership of assets to satisfy individual debts where the facts dictated a necessity so to do.

Other cases which have pierced corporate ownership to satisfy individual debts include *Rainbo Gold Mines v. Magnus*, 371 F.2d 519 (10th Cir. 1966); *Allied Chemical Corp. v. Randall*, 321 F.2d 320 (7th Cir. 1963); *Shamrock Oil and Gas Co. v. Ethridge*, 159 F.Supp. 693 (D.C.Colo.1958); *Kolmer-Marcus, Inc. v. Winer*, 32 A.D.2d 763, 300 N.Y.S.2d 952 (1969); *Platts v. Platts*, 49 Wash.2d 203, 298 P.2d 1107 (1956); and *Central Nat'l Bank and Trust Co. of Des Moines v. Wagener, supra.* This court can find no reason in law or logic to limit the application of the alter ego doctrine as appellants would have us. Therefore we affirm the trial court's decision and hold that Gem State Developers, Inc., as the alter ego of Frank and Bertha Marcum, is liable for the obligations incurred by the Marcums in this transaction.

■ Appellant's final assignment of error is that the district court erred in awarding attorneys fees to respondents. Appellants contend that such award constitutes consequential damages and is inappropriate in light of the trial court's decision to restore the parties to their pre-contract positions. Whatever the merit of this argument, we find it unnecessary to make an analysis of the substantive law of damages in answering this issue. Rather, we hold that the award of attorneys fees was properly made under the authority of I.C. § 12–121,[2] which

---

2. Attorney's fees.—In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees.

was enacted by the legislature in 1976 and became effective July 1, 1976 under the usual rule of I.C. § 67–510. *See V–1 Oil Co. v. State Tax Comm.*, 98 Idaho 140, 559 P.2d 756 (1977). Since the final judgment in this case was entered November 26, 1976, I.C. § 12–121 was applicable. And since the sum of $4250 was found to be reasonable by the trial judge, and the award was made so as to do complete justice between the litigants, this court will not interfere. We conclude that the award was well within the trial court's discretionary powers under the statute, and we affirm.

■ Finally there is the issue of attorneys fees sought by respondents on this appeal. Respondents maintain that I.C. § 12–121 provides the authority for this court to make an award to the prevailing party for reasonable attorneys fees incurred in preparing for this appeal. We agree.

■ The statute provides that "in any civil action, the judge may award reasonable attorney's fees to the prevailing party . . . ." As an aid in construing this language, I.C. § 73–114 provides:

> Statutory terms defined.—Unless otherwise defined for purposes of a specific statute, words used in these compiled laws in the present tense, included the future as well as the present; words used in the masculine gender, include the feminine and neuter; the *singular number includes the plural and the plural the singular.*

(Emphasis added.) *See also State v. Holder*, 49 Idaho 514, 290 P. 387 (1930); *Houser v. Hobart*, 22 Idaho 735, 127 P. 997 (1912). Since a "judge" is simply an officer or member of a tribunal assembled under authority of law for the administration of justice, we conclude that the singular "judge" should also be construed to mean the plural "judges" or "justices," and we hold that the statutory power to award attorneys fees applies to the members of this court as well as to the district court judges throughout the state. This con-

struction does no violence to the clear purpose of the statute which in a proper case is to reimburse the successful party for legal fees incurred in prosecuting his or her legal rights. Moreover, had the legislature intended to limit the statutory authority to any particular level of courts within the judicial system, it could easily and clearly have done so.

■ In awarding reasonable attorney fees to the prevailing party on appeal, this court will be guided by the following general principles. Since the statutory power is discretionary, attorney fees will not be awarded as a matter of right. Nor will attorney fees be awarded where the losing party brought the appeal in good faith and where a genuine issue of law was presented. In normal circumstances, attorney fees will only be awarded when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. See I.R.C.P. 54(e)(1). Applying these considerations to the case at bar, this court declines to award attorney fees on appeal to respondents.

Judgment affirmed. Costs to respondents.

SHEPARD, C. J., BAKES and BISTLINE, JJ., concur.

BAKES, Justice, concurring specially:

I concur with the majority, although I wish to note my reasons for that concurrence with respect to the liability of defendant Gem State Developers, Inc. The separateness of the corporate entity will be disregarded only in exceptional cases, and the mere fact that a corporation is owned or controlled by one person is not in itself sufficient to warrant a disregard of the corporate personality. *See* 6 Z. Cavitch, Business Organizations § 120.05[2] and [7] (1977). Nevertheless, if necessary to promote the ends of justice the corporate entity may be disregarded if the corporation is

a close corporation whose business is conducted by the president-owner on a personal basis without observing the necessary corporate formalities. *Id.*

Here, the record indicates that the corporation, Gem State Developers, Inc., did not observe any of the corporate formalities in its dealings which were conducted by its president, Marcum. Indeed, at the trial Mr. Marcum did not even recall that his wife was vice-president of Gem State. Also, there was no evidence of any documented arrangement or agreement between the Marcums and Gem State for transferring ownership of the property which the Marcums had contracted to sell and to which Gem State held title. In sum, a clear inference from the evidence presented to the trial court is that the Marcums themselves ignored the separateness of the corporate entity and that Gem State was merely their alter ego. Therefore, I concur with the majority's affirmance of the trial court's findings.

DONALDSON, Justice, concurring in part and dissenting in part.

The respondent requested attorney fees on appeal pursuant to I.C. § 12–121 and the majority while denying them, states they may be awarded in an appeal under certain circumstances. I cannot agree with that part of the majority opinion that holds that I.C. § 12–121 authorizes attorney fees on appeal. This statute provides that a "judge" may award attorney fees to the prevailing party in any civil action. I do not believe that this statute empowers "justices" of the Idaho Supreme Court to award attorney's fees on appeal to the prevailing party in a civil action. I am unable to find definitions in the Idaho Constitution or the Idaho Code of "judge" and "justice." There are several sections in the Constitution[1] and statutes in the Code,[2] however, where district "judges" are impliedly distinguished from Supreme Court "justices."

The Idaho Constitution refers to members of the Supreme Court as "justices"[3] and members of the district bench as "judges."[4] Also, Title 1, Ch. 2 of the Idaho Code, which pertains to the Idaho Supreme Court, refers to members of the Supreme Court as "justices." Title 1, Ch. 7 of the Idaho Code, which pertains to the Idaho district courts, refers to members of the district bench as "judges." The conclusion to be drawn from the examples cited above is that the term "judge" is not to be considered synonymous with the term "justice." In addition, the statute states that "the judge" may award attorney's fees. The statute reads in the singular, i. e. one judge. Idaho Code § 73–114 establishes the rule of construction that " . . . the singular number includes the plural . . . ." This rule of construction is not mandatory, but merely instructive, and is to be implemented only when necessary to carry out the obvious intent of the legislature. *C. Forsman Real Estate Co. v. Hatch,* 97 Idaho 511, 547 P.2d 1116 (1976). I cannot say that it is necessary to apply this rule of construction to I.C. § 12–121 to carry out the obvious intent of the legislature. Therefore the singular number in I.C. § 12–121 should not include the plural. If the statute can only be read in the singular, it does not allow this Court to award attorney's fees. Article 5, § 6 of the Idaho Constitution provides that any decision of the Supreme Court must be announced by a majority of the justices. Under the statute one justice rather than a majority of the justices could award attorney's fees, a result repugnant to art. 5, § 6. I do not believe that it was the intent of the legislature to empower this Court to award attorney's fees on appeal by enactment of I.C. § 12–121. The respondent's request for attorney's fees should be denied.

BISTLINE, Justice, specially concurring.

In holding that attorney fees for the appeal should not be allowed, I concur with

---

1. Idaho Const. art. 5, §§ 6, 17, 25, and 27.

2. E. g., I.C. §§ 1–1903, –2001, –2002, –2004, –2005, –2006, –2007, –2009.

3. Idaho Const. art. 5, §§ 6, 7, 8, 17, 25, and 27.

4. Idaho Const. art. 5, §§ 6, 9, 11, 12, 17, 23, 25, and 27.

what Justice Donaldson has written, adding that the distinction which he has carefully drawn is but one reason for holding that attorney fees on appeal are not provided for in either I.C. § 12–120 or § 12–121.

The legislature, in three times addressing the awarding of attorney fees under those statutes, has not once mentioned the award of attorney fees in an appellate proceeding. Such can only mean that the legislature clearly had in mind that a civil action is *generally* understood as a lawsuit, a trial or proceeding wherein rights and remedies are tried and decided in our *district courts*. I.C. § 5–101.

An appeal is not a civil action in any sense of being a trial, but is a *review* of the final judgment or dispositive order which has been entered in a civil action. I.C. § 13–101. An appellate court *reviews* a written record of that action to ascertain if the parties have had a fair trial free from prejudicial error. While a plaintiff commences or *brings* an action, I.C. § 5–101 (now repealed) and I.C. § 5–409, an appeal is *taken*. I.C. § 13–201;[1] Rule 11, I.A.R.[2] The purpose of an appeal is to obtain a review, *i. e.*, an examination for error. I.C. § 13–201; § 13–219, now repealed.

There simply is no language whatever in either I.C. § 12–120 or I.C. § 12–121 which would justify a conclusion that this Court has been empowered to award attorney fees on the appeal of any civil action which has been taken to this Court.

A conclusion that the legislature did not have in mind the awarding of attorney fees on an appeal is fortified by an examination of previous legislative enactments and decisions of this Court. In 1951, the legislature passed the first statute which made insurance carriers liable for non-payment of amounts justly due under insurance contracts. As noted in *Molstead v. Reliance Natn'l Life Ins. Co.*, 83 Idaho 458, 465, 364 P.2d 883, 887 (1961), I.C. § 41–1403 (now amended and recodified as I.C. § 41–1839) provided that "the surety 'shall, *in any ac-*

*tion in any court* in this state for recovery under the terms of such policy, * * *, pay such further amount as the court shall adjudge reasonable as attorneys' fees in such action.' " (Emphasis in *Molstead*.) It was held in *Molstead* that "the phrase, 'in any action in any court in this state,' without definitive classification, includes the Supreme Court." *Id.* Conversely, in I.C. §§ 12–120 and 121, the legislature did not use that language, "in any court."

In yet another context, *i. e.*, the legislature's grant of attorney's fees in a successful materialmen's lien foreclosure action, this Court has ruled as it did in *Molstead*. In *Hendrix v. Gold Ridge Mines, Inc.*, 56 Idaho 326, 337–38, 54 P.2d 254, 258 (1936), a successful claimant was awarded attorney's fees in a trial court action adjudicating the validity of and foreclosure of his lien. The defendant appealed to the Supreme Court, whereupon, the judgment being affirmed, the materialman requested attorney's fees on the appeal, predicating his claim on the statute, I.C.A. § 44–513 (now I.C. § 45–513), which read: "The court shall also allow as part of the costs . . . reasonable attorney's fees." This Court denied attorney's fees for the appeal, pointing out that the California legislature, in passing a similar statute, "specifically provided for the allowance of 'reasonable attorney's fees in the superior and *supreme* courts.' " *Id.* at 337, 54 P.2d at 258 (emphasis added). This holding was followed 6 years ago in *Ivie v. Peck*, 94 Idaho 625, 495 P.2d 1110 (1972), and applied again in *Haile v. Davis*, 99 Idaho 853, 590 P.2d 580 (1979). Obviously the Court continues to recognize legislative awareness to a distinction between Idaho district courts and the Idaho Supreme Court. No reason appears for doubting a like ability of legislators to distinguish between a trial court *judge* and appellate court *justices*. On the contrary, there is good reason to believe otherwise. For instance, see I.C. § 18–1802 and § 18–1803 where the distinction was observed beginning almost a century ago.

---

1. I.C. 13–201 commences with this language: "An appeal *may be taken* to the Supreme Court from a district court." (Emphasis added.)

2. Rule 11 commences with this language: "An appeal as a matter of right *may be taken* to the Supreme Court . . . ." (Emphasis added.)

In resolving this problem, we should also take note that this same Court in *Molstead* quoted approvingly from *Johnson v. Prudential Life Ins. Co.*, 120 Or. 353, 252 P. 556 (1927), for the very proposition which I mention, that " 'an appeal is a separate procedure from the trial . . . .' " *Molstead*, 83 Idaho at 466, 364 P.2d at 887.

In those rare instances where an appeal has been taken solely for delay, perhaps there should be some remedy. Until just recently, when this Court prevailed upon the legislature to again repeal a number of statutes, I.C. § 13–220 specifically allowed for the assessment of damages to be added to the costs. This statute was in effect, and had been for over 90 years when the legislature enacted §§ 12–120 and 121. It is proper to assume that the legislature was aware of I.C. § 13–220 when it deliberately did not include in §§ 12–120 and 121 any provision for awarding attorney fees to the successful party on an appeal which might be taken. While the argument is advanced that the legislature could have specifically provided that attorney fees on appeals were not within the scope of I.C. § 12–121, it is more aptly said that the legislature could have resolved all doubt by saying that attorney fees on appeal were recoverable. To go the one way is to indulge in unwarranted surmise and conjecture; to go the other is to accept an unambiguous statute as written. It must be kept firmly in mind that the shifting of attorney fees so that the prevailing party is compensated for his fees at the expense of his losing adversary is a matter of *substantive law*. The making of substantive law is for the legislature, not for the Supreme Court. If attorney fees on appeals are to be awarded, the legislature has had, and continues to have, both the opportunity and the ability to say so, and its capability for doing so in clear and unequivocal language should not be doubted.

While touching upon the question of substantive law, this is an appropriate time to state my belief that the Court improvidently adopted Rule 54(e), promulgated on January 2, 1979, by which this Court severely limited the scope and effect of I.C. § 12–121. In a proper case, not by "procedural" rule of court, this Court could be called upon to determine the construction to be placed upon I.C. § 12–121, and very well might hold, as many many cases have, that "may" is a discretionary word, thereby invoking the discretionary powers of a trial judge. This Court might hold with the view that use of the word "may" granted the district courts the very broad power to award attorney's fees when the award and amount of attorney's fees seemed proper to the court. Or, the Court might conclude that it should declare and set out guidelines and bounds for the exercise of that discretion. Such is not the proposition which needs to be now addressed.

I doubt both the wisdom and the lawfulness of a Court *rule* which essentially amends a substantive statute. In *State v. McCoy*, 94 Idaho 236, 486 P.2d 247 (1971), Justice McFadden, though dissenting in that case, expressed concern over a majority opinion which held a statute "unconstitutional as being a legislative encroachment on the inherent powers of the judiciary." *Id.* at 241, 486 P.2d at 252. The concern of Justice McFadden in that case was separation of powers. In his words: "[T]his court *must exercise special caution* in this area." *Id.* (emphasis supplied).

I recognize, of course, our concern in the matter under discussion is not the constitutionality of I.C. § 12–121, but rather the scope and effect of this statute. It cannot be gainsaid that the awarding of attorney's fees is a matter of substantive law. In all of the discussion that has been had on the subject, no one has gone so far as to advocate for the view that the Court could have by rule accomplished that which the legislature did by statute. Yet, the rule clearly amends the statute, an important point which apparently escapes the observation of the other members of the Court. This is not too unexpected where the matter comes before the Court administratively rather than in a contested case, wherein we receive the benefit of the argument and authority of able counsel.

It was the prerogative of the legislature, and the legislature alone, to create law whereby attorney's fees may be awarded by district courts in all civil actions; where that sparsely worded statute has created confusion and proliferation of litigation, the legislature, not the Court, should amend its own statute, giving it such further definition and delimitation as it concludes to be necessary and desirable. Up until now it has not done so. It is not for the Court, however, but for the legislature to express the will of the people. Where, as Justice McFadden wrote in *McCoy*, the separation of power doctrine is a matter of great importance and delicacy, the Court should, in my opinion, act in an exercise of "special caution" before expanding I.C. § 12–121 to read that it encompasses appeals to this Court, and before amending the statute, purportedly under the guise of its rule-making power. I fear that a "special caution" has not been exercised.

Basically, the Court needs to keep in mind that while it is composed of experts in constitutional law, the legislature is not. The legislature does have its experts in many and varied fields, but it is not to be expected that educators, bankers, insurance brokers, ranchers, and those in other non-legal fields are properly cognizant of the doctrine of separation of powers, including the right in the legislature, and it alone, to create, modify or repeal *substantive* law. The Court bears the ultimate responsibility of safeguarding the integrity of our Constitution.