71 P.3d 454

**STUDENT LOAN FUND OF IDAHO, INC., a non-profit corporation, Plaintiff–Respondent,**

v.

**Paul A. DesFOSSES, Defendant–Appellant.**

No. 28427.

Supreme Court of Idaho,
Boise, May 2003 Term.

May 23, 2003.

Paul A. DesFosses, Pocatello, pro se appellant.

Judson W. Tolman, Fruitland, argued for respondent.

WALTERS, Justice.

Paul DesFosses applied for and was granted a deferment regarding repayment of his student loan obligations, but shortly thereafter he defaulted on the loans. Student Loan Fund of Idaho (SLFI) paid the lender and as assignee on the notes brought suit against DesFosses to recover the loan amounts, plus interest and costs. SLFI was awarded judgment after a trial to the court. Because we conclude that there was substantial, competent evidence for the magistrate to award judgment in favor of SLFI, we affirm the judgment. As to the collection costs award-

ed by the magistrate, we remand for recalculation in accordance with the pertinent federal statutes and regulations.

## FACTUAL AND PROCEDURAL BACKGROUND

During the period from May 1989 to September 1991, Paul DesFosses accepted funds from Key Bank of Idaho and executed four promissory notes totaling approximately $14,000.00. The terms of the promissory notes provided for a repayment date beginning six months after the borrower ceased being at least a half-time student. The terms also provided that certain interest would be capitalized. The loans were guaranteed by SLFI.

DesFosses ceased being at least a half-time student on or about May 15, 1992, and he was thus entitled to a six-month grace period during which interest on the student loans was paid by the government. The principal and interest became due and owing in December of 1992.

On April 5, 1993, DesFosses submitted a form supplied by SLFI designated Request for Deferment of Repayment/Unemployment Deferment. As shown on the form, he requested "an unemployment deferment for the period 1/15/93 to 4/15/93," asserting that he had become unemployed on November 1, 1992, in connection with a knee injury and resultant surgery. On page two of the Request form, DesFosses completed the section seeking a forbearance to cover the past-due period prior to the beginning date of his deferment, indicating as a reason, "I have no job."

SLFI granted DesFosses an unemployment deferment from February 5, 1993 to April 15, 1993. Based on the date of his Request for Deferment, the deferment could only be carried back sixty days, which resulted in a deferment for a period less than that requested by DesFosses. SLFI, however, did grant DesFosses repayment forbearance from January 15, 1993 through February 4, 1993.

When DesFosses failed to make payments as required by the terms of the notes and was deemed in default, SLFI paid the lender in December of 1993. The notes to the lender were thereafter assigned to SLFI for collection.

SLFI sent a demand letter to DesFosses as a precursor to filing a complaint on the debt evidenced by the notes. SLFI sought judgment against DesFosses for damages in the sum of $22,447.07, plus prejudgment and post-judgment interest, collection costs, and reasonable attorney fees and costs.

After a trial to the court, the magistrate entered findings that DesFosses had failed to pay the loans in accordance with his agreement to pay, concluding that SLFI was entitled to judgment against DesFosses in the amount of $22,447.07, plus interest and attorney fees. The magistrate also found that DesFosses failed to make proper application for cancellation of the loan due to disability and/or unemployment. In its amended findings and conclusions, dated August 23, 2001, the magistrate entered a supplemental finding that DesFosses "did not properly apply for or receive a deferment of interest accruing after April 15, 1993, and it is the court's conclusion that he is legally obligated to pay such interest." The judgment was filed on September 5, 2001.

DesFosses appealed from the magistrate's decision. The district court heard arguments on February 11, 2002, and issued its appellate decision affirming the judgment in favor of SLFI, with the exception of the collection costs. The district court reversed and remanded the issue of the collection costs for a revised calculation pursuant to the applicable federal statutes and regulations. DesFosses then appealed from the decision of the district court.

## STANDARD OF REVIEW

When reviewing a case decided in the magistrate division that has been appealed to the district court, the Supreme Court reviews the magistrate's decision independently of, but with due regard for, the district court's intermediate appellate decision. *Post Falls Trailer Park v. Fredekind*, 131 Idaho 634, 962 P.2d 1018 (1998). The Supreme Court will uphold the magistrate's findings of fact if supported by substantial

and competent evidence. *Howard v. Cornell*, 134 Idaho 403, 3 P.3d 528 (2000); *Henderson v. Smith*, 128 Idaho 444, 915 P.2d 6 (1996); I.R.C.P. 52(a). Issues of law are freely reviewed. *Henderson, supra.* When a trial court's findings of fact are challenged on appeal, the appellant has the burden of showing error, and the reviewing court will review the evidence in a light most favorable to the respondent. *Muniz v. Schrader*, 115 Idaho 497, 767 P.2d 1272 (Ct.App.1989).

## DISCUSSION

Preliminarily, the authority of the SLFI to sue DesFosses on the underlying notes to the original lender, Key Bank, is not in question. Pursuant to a guarantee agreement, SLFI paid a default claim to Key Bank in December of 1993 after DesFosses failed to make the required loan payments. Under 34 C.F.R. § 682.209(3)(i)(B), the payments were scheduled for repayment beginning on January 15, 1993, or six months after DesFosses ceased to be at least a half-time student.[1] SLFI sought to recover from DesFosses in an action on the underlying promissory notes, as assignee of the notes from Key Bank.

In its complaint, SLFI claimed that DesFosses was indebted to it in the sum of $22,447.07, consisting of principal and interest, which included adjustment for payments made and all applicable credits as of February 14, 2001. SLFI did not seek payment of the interest that accrued during the term of the unemployment deferment from February 4, 1993 to April 15, 1993; however, interest that accrued during the period of forbearance from January 14, 1993 to February 4, 1993, was added into the principal amount owing.

## I.

DesFosses first argues on appeal that he had fully established his eligibility for a disability deferment and that he had substantiated for the benefit of SLFI the multiple injuries, surgeries, and treatment that rendered him unable to work for at least 108 months between April 1993 and the July 5, 2001, trial date. He asserts that he kept SLFI informed of his continuing disability after April 15, 1993, and that he should not be denied a disability deferment to which he was clearly entitled but for which he was never instructed by SLFI to make application.

As a condition for receiving a deferment, under the Federal Family Education Loan (FFEL) Program, the borrower must request the deferment and provide the lender with all information and documents required to establish eligibility for a specific type of deferment. 34 C.F.R. § 682.210(a)(4). "A deferment is authorized for a FFEL borrower during any period when the borrower is temporarily totally disabled." 34 C.F.R. § 682.210(b)(1)(iv).

The specific requirements to obtain a disability deferment are set forth in 34 C.F.R. § 682.210(f)(i):

To qualify for a temporary total disability deferment, a borrower shall provide the lender with a statement from a physician, who is a doctor of medicine or osteopathy and is legally authorized to practice, certifying that the borrower is temporarily totally disabled as defined in Sec. 682.200(b).

"Temporarily totally disabled" is defined as follows: "The condition of an individual who, though not totally and permanently disabled, is unable to work and earn money or attend school, during a period of at least 60 days needed to recover from injury or illness." 34 C.F.R. § 682.200(b).

The record is clear that DesFosses never applied for a temporary total disability deferment, although he testified that he had submitted medical records to SLFI on a number of occasions. As SLFI points out in this appeal, it is not for the court, but SLFI, to grant an authorized deferment, during which time the government pays the interest on the loans. The remedy that DesFosses is seeking—relief from responsibility for repayment

---

1. 34 C.F.R. § 682.209(a)(3)(i)(B) provides that the repayment period begins "(B) For a borrower with a loan for which the initial applicable interest rate is 8 or 9 percent per year, the day after 6 months following the date on which the borrower is no longer enrolled on at least a half-time basis at an institution of higher education."

of interest that accrued during the period of time he was disabled—is not within the province of the court to grant. We conclude that the magistrate properly held that "[d]etermination of disability sufficient to excuse the defendant's performance under the agreement is an issue that must first be presented to the Student Loan Fund of Idaho."[2]

## II.

■ DesFosses raises as a second issue on appeal that SLFI stipulated that he was entitled to a disability deferment for at least 108 months following April of 1993, but that SLFI failed to honor the deferment beyond April 15, 1993. He argues that he was therefore not liable for interest payments on the loans during the period of his disability, for which he should have been granted a deferment.

A review of the trial transcript reveals that counsel for SLFI offered to "stipulate to the fact that [DesFosses] hasn't been employable for 108 months." (Tr., p. 35) The stipulation does not speak to DesFosses' entitlement to any deferment and thus does not in any way support DesFosses' claim that he was disabled during that time such that he was entitled to a disability deferment and government payment of interest benefits.

As previously noted, the deferment that DesFosses applied for and received was an unemployment deferment pursuant to 34 C.F.R. § 682.210(h)(2):

A borrower also qualifies for an unemployment deferment by providing to the lender a written certification—

(i) Describing the borrower's conscientious search for full-time employment dur-

ing the preceding six months, except in the case of the initial period of unemployment, including, for each of at least six attempts to secure employment to support the period covered by the certification—

(A) The name of the employer contacted;

(B) The employer's address and phone number; and

(C) The name or title of the person contacted;

(ii) Setting forth the borrower's latest permanent home address and, if applicable, the borrower's latest temporary address; and

(iii) Affirming that the borrower has registered with a public or private employment agency, if one is within a 50–mile radius of the borrower's permanent or temporary address, specifying the agency's name and address and date of registration.

Certification by a doctor that the borrower is temporarily totally disabled is not relevant to an unemployment deferment. The authorized deferment period began on February 4, 1993, and ended on April 15, 1993, the end date specified by DesFosses in his Request form. During any period when the borrower has an authorized deferment, the Secretary pays a lender the interest that accrues on an eligible Stafford loan. 34 C.F.R. § 682.300(b)(1)(ii). Therefore, DesFosses was excused from payment of the interest that accrued between February 4 and April 15, 1993, and that interest was not part of the judgment requested in SLFI's complaint. Any claim by DesFosses that SLFI failed to honor the deferment is not based on fact.

---

2. 20 U.S.C. § 1078(b)(1)(Y)(i) states:

Any State or any nonprofit private institution or organization may enter into an agreement with the Secretary [of Education] for the purpose of entitling students who receive loans which are insured under a student loan insurance program of that State, institution, or organization to have made on their behalf the payments provided for in subsection (a) of this section if the Secretary determines that the student loan program—
(Y) provides that—
(i) the lender shall determine the eligibility of a borrower for a deferment described in subparagraph (M)(i) based on receipt of—

(I) a request for deferment from the borrower and documentation of the borrower's eligibility for a deferment;
(II) a newly completed loan application that documents the borrower's eligibility for a deferment; or
(III) student status information received by the lender that the borrower is enrolled on at least a half-time basis;
(ii) the lender will notify the borrower of the granting of any deferment under clause (i)(II)or (III) of this subparagraph and of the option to continue paying on the loan.

## III.

 DesFosses contests the magistrate's conclusion holding him legally obligated to pay the interest accruing after April 15, 1993. He argues that he continued to be entitled to a deferment based on a disability that caused him to be unemployable for at least 108 months beyond April 15, 1993. He maintains that through error or oversight, SLFI lost the documentation in support of his disability deferment that was denied and improperly declared his loans delinquent on the same day that he was granted his deferment.

Substantial and competent evidence exists to support the magistrate's finding that Des-Fosses did not properly apply for or receive a deferment and interest benefits accruing after April 15, 1993. DesFosses' arguments manifest his unresolved confusion as to the distinct deferments that were available to him, the unemployment deferment and the temporary total disability deferment, only one of which he ever pursued. Of further note is the fact that "[a] borrower whose loan is in default is not eligible for a deferment on that loan, unless the borrower has made payment arrangements acceptable to the lender prior to the payment of a default claim by a guaranty agency."[3] As to his delinquency status, DesFosses has not pointed to a specific finding by the magistrate that is unsupported by the evidence.

## IV.

Finally, DesFosses argues without citing authority for his position that it was error for the magistrate to award collection costs.[4] Issues on appeal, however, that are not supported by propositions of law or authority are deemed waived and will not be considered by the Supreme Court. *Eagle Water Co., Inc. v. Roundy Pole Fence Co., Inc.*, 134 Idaho 626, 7 P.3d 1103 (2000). *See also U.S. Bank Nat. Ass'n v. Kuenzli,* 134 Idaho 222, 999 P.2d 877 (2000)(issue raised on appeal but not supported with argument or authority is deemed waived). Therefore,

we need not discuss this issue further except to note that the district court remanded the collection cost award to be recalculated in accordance with applicable statutes and regulations.

## CONCLUSION

The judgment in favor of SLFI, which is supported by substantial, competent evidence, is hereby affirmed in so far as determining the principal and interest due. We remand for a revised calculation of collection costs, as ordered by the district court. Thereafter, the magistrate should enter an amended judgment. We award no attorney fees on the appeal pursuant to I.C. § 12–121 in that the standard expressed in *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979), has not been met. Costs to SLFI.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, concur.

---

**3.** DesFosses' loans were in "default" after his failure to pay persisted for 270 days. *See* 34 C.F.R. § 682.200(a)(3)(b). The SLFI paid the default claim in December of 1993.

**4.** The authority for an award of collection costs to the guarantee agency, SLFI, is found in 34 C.F.R. § 682.410(b)(2).