■ FIRST NATIONAL BANK OF GLENS FALLS, Respondent-Appellant, v G. F. CLEAR, INC., et al., Appellants-Respondents. — Cross appeals from a judgment of the Supreme Court in favor of plaintiff, entered June 1, 1982 in Warren County, upon a decision of the court at Trial Term (Dier, J.), without a jury. As security for the loan of $60,000 from plaintiff, as evidenced by a promissory note in that amount, defendant corporation pledged all its inventories and accounts receivable pursuant to the term of a standard form security agreement. Defendant Gerald Clear, owner of said corporation, and his wife, Janet L. Clear, personally guaranteed the note and, as collateral security for that personal guarantee, executed a second mortgage on their personal residence in the sum of $30,000 to plaintiff. Janet L. Clear's personal guarantee was limited to her equity in the residence, her husband's was unrestricted. The note, dated October 4, 1976, provided for monthly payments of principal and interest, in fixed amounts, depending upon prevailing interest rates and, as an inducement for the bank to make the loan, the principal and interest due thereunder was guaranteed by the Small Business Administration. The mortgage, note and personal guarantee all contained an acceleration clause empowering plaintiff to foreclose and sell the residence and the inventory upon any default in payment of principal or interest for 30 days. Default occurred on February 4, 1978, and on March 24, 1978 plaintiff gave notice of default to all defendants exercising its rights under the acceleration clause. The corporation made subsequent payments, which were accepted by the bank and applied to the unpaid balance. By mutual agreement of the parties, a going-out-of-business sale was started early in July continuing until August 2, 1978, when plaintiff took possession of the corporate premises after agents of the Internal Revenue Service appropriated the proceeds of the sale to that date. Thereafter, plaintiff conducted an auction sale of the remaining inventory on August 21, 1978, and after applying the net proceeds obtained in the various liquidation procedures determined that, as of October 10, 1978, the unpaid balance then due on the loan was $38,554.64. This action was commenced in January, 1979. Defendants' answer denied default and asserted various defenses and counterclaims, only one of which survived a motion for summary judgment and formed a basis for the trial of this action and the issues before us on this appeal. Those issues are (1) whether default occurred, and (2) whether defendants were damaged because of plaintiff's failure to sell the corporation's collateral in a commercially reasonable manner as required by the applicable provisions of the Uniform Commercial Code. Trial Term found defendants in default, but agreed the auction sale was commercially unreasonable because the notice of sale omitted a recitation of all of the terms thereof, and, accordingly, the court credited defendants with what it perceived to be the value of the goods sold at auction together with an additional amount for plaintiff's delay in applying sale proceeds to the indebtedness due. It thereupon entered judgment in favor of plaintiff, dismissed defendants' counterclaim, directed sale of the residence, and granted plaintiff the right to move for a deficiency judgment if necessary. These cross appeals ensued. We agree with Trial Term that the corporation was in default and that plaintiff properly exercised its rights to accelerate payment of the amount then due. Moreover, acceptance of payments by the bank after February 4, 1978, the date of default, did not act as a waiver of the default (*Bowers v Zaimes*, 59 AD2d 803). This conclusion is buttressed by the mutual agreement to conduct the going-out-of-business sale which belies any waiver by plaintiff or reliance thereon by defendants. Nor does the record before us demonstrate a rescission of plaintiff's demand for full payment upon

default. This issue, and others related to it, were not raised at trial and appear for the first time on this appeal. Being otherwise without merit, they cannot, in any event, be considered by this court (*Kolmer-Marcus, Inc. v Winer,* 32 AD2d 763, affd 26 NY2d 795). As to the finding of commercial unreasonableness of the auction sale, we reach a conclusion different from that of the trial court. The rights of a secured party to dispose of collateral after a default are set forth in section 9-504 of the Uniform Commercial Code which provides in part that "every aspect of the disposition * * * must be commercially reasonable" (Uniform Commercial Code, § 9-504, subd [3]). The burden of proving the commercial reasonableness of every aspect of the disposition of the collateral is upon the plaintiff (*General Elec. Credit Corp. v Durante Bros. & Sons,* 79 AD2d 509). Trial Term found that since the bank's notice of sale did not include the words "Terms, cash or certified check only" and its own witness, the auctioneer who conducted the sale, testified that in his view such omission was not commercially reasonable, there was a failure on the part of plaintiff to comply with the statutory mandate. Our contrary view is based upon several considerations. Section 9-507 (subd [2]) of the Uniform Commercial Code provides: "If the secured party either sells the collateral in the usual manner in any recognized market therefor * * * or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner". In this case, plaintiff bank selected an auctioneer to sell the collateral, an auctioneer well-qualified and experienced, whose own advertising and dissemination of information to 50 or 60 individuals considered to be prospective purchasers was appropriate and, in our view, commercially reasonable. Moreover, his advertising spelled out the terms of sale and included the words "Cash or certified check", and since it is the auctioneer's practice in conducting the sale, rather than the bank's, that should govern, we conclude that the statutory requirements have been fulfilled. The record demonstrates a good-faith attempt by the plaintiff to dispose of all of the collateral to the parties' best advantage, and, therefore, consideration must be given to the totality of the circumstances surrounding the entire proceedings, rather than an isolated portion thereof (*Bankers Trust Co. v Dowler & Co.,* 47 NY2d 128, 137; *National Bank of Delaware County v Gregory,* 85 AD2d 839, 840; *General Elec. Credit Corp. v Durante Bros. & Sons, supra*). Accordingly, the amount payable at the time of the auction sale should be reduced by the sum of $1,042.17 to compensate for plaintiff's delay in applying the sales proceeds to the indebtedness, leaving a deficiency judgment due in the sum of $37,512.47 plus interest to be determined upon remand to the trial court. Judgment modified, on the law and the facts, by reversing so much thereof as found the auction sale to have been conducted in a commercially unreasonable manner and entered a deficiency judgment in the sum of $23,082.37 plus interest, and substituting therefor a finding that the auction sale was commercially reasonable and increasing the deficiency judgment to $37,512.47 plus interest, and matter remitted to Trial Term for determination of appropriate interest, and, as so modified, affirmed, without costs. Mahoney, P. J., Sweeney, Kane, Casey and Levine, JJ., concur.